Donna LAUTH, Appellant,

v.

STATE of Alaska, Department of Health and Social Services, Division of Public Assistance, Appellee.

No. S–9096.

Supreme Court of Alaska.

Nov. 9, 2000.

Mark Regan, Jennifer Beardsley, Alaska Legal Services Corporation, Juneau, Robert K. Hickerson, Alaska Legal Services, Anchorage, for Appellant.

Shannon O'Fallon, Assistant Attorney General, Bruce M. Botelho, Attorney General, Juneau, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, and BRYNER, Justices.

*OPINION*

MATTHEWS, Chief Justice.

## I. INTRODUCTION

In 1996 the legislature created the Alaska Temporary Assistance Program (ATAP) to provide welfare benefits to needy children and their families. Donna Lauth is an ATAP applicant whose application for benefits was denied because she did not have "physical custody" of her children as defined in the ATAP regulations. Lauth appeals that denial, asserting that the regulatory definition is arbitrary, unreasonable, and inconsistent with the governing statutes. She further asserts that the state's method for determining physical custody violates equal protection because it treats families where only one parent applies for ATAP benefits differently than families where both parents apply.

Because the regulatory definition of "physical custody" is a reasonable interpretation of the governing statutes and because the state's practice of distinguishing between children with different levels of need is warranted by this difference, we affirm the superior court's dismissal of Lauth's claims.

## II. FACTS AND PROCEEDINGS

### A. The Alaska Temporary Assistance Program

In 1996 the Alaska Legislature created ATAP as part of its comprehensive efforts at welfare reform.[1] ATAP replaces the now-defunct federal program Aid to Families with Dependent Children.[2] The Division of Public Assistance ("the agency") has broad statutory authority to "adopt regulations and take action to implement, interpret, and administer" the new state program.[3]

ATAP provides "assistance for basic living expenses and self-sufficiency services to needy children and their families."[4] Applicants must apply directly to the Division of Public Assistance for ATAP benefits. In order to qualify for ATAP benefits, the parent must have "physical custody of one or more . . . dependent children."[5]

The regulations regard "physical custody" to exist where a child is "living in the home of a caretaker relative."[6] Two different provisions describe how the agency should determine whether a dependent child is "living in the home of a caretaker relative." But these provisions differ in important respects. 7 Alaska Administrative Code (AAC) 45.225(b) states:

When determining if a child is living in the home of a caretaker relative, the division shall consider the location of the child to be the primary determining factor. Ex-

---

1. *See* AS 47.27.005 *et seq.*

2. *See* 42 U.S.C. § 604 *et seq.* (repealed in 1996 by Pub.L. 104–193).

3. *See* AS 47.27.005(8) (stating that the division shall "adopt regulations and take action to implement, interpret, and administer the provisions of [the ATAP statute].").

4. AS 47.27.005(1).

5. AS 47.27.010(1); *see also* AS 47.27.020(a).

6. *See* 7 Alaska Administrative Code (AAC) 45.210(4); 7 AAC 45.225(a).

cept in the case of a temporary absence of the child or caretaker relative from the usual place of residence, the child's home is the place where the child resides more than half of the time in a month.

In contrast, 7 AAC 45.225(d) states:

[W]hen two caretaker relatives, living together or apart, claim ATAP benefits for the same child, the division shall determine which relative is exercising the primary responsibility for the care and control of the child. In determining which of the two caretaker relatives the child is actually living with, the division shall consider the following:

(1) whose home the child is living in;

(2) how long the child will probably remain in that home;

(3) what percentage of the month the child will be in the separate home of each of the two caretaker relatives;

(4) who will provide the majority of the child's guidance, discipline, and physical and financial needs; and

(5) the nature and frequency of the contacts made with the child by the relative who is absent from the child's current place of residence.

## B. *Donna Lauth's Application for ATAP Benefits*

Donna Lauth and John Hasty have two young daughters. During the time relevant to this appeal, Lauth and Hasty shared custody of the girls pursuant to a temporary custody order. The girls stayed with Lauth during the day six days out of seven and stayed with Hasty during the evenings, at night, and one weekend day. Lauth was responsible for cooking the girls breakfast, fixing them lunch, putting them down for their naps, getting their snacks, and taking care of them until Hasty picked them up at around 6:00 p.m. Hasty was responsible for getting the girls dinner, giving them baths, and putting them to bed.

On October 27, 1997, Lauth applied for ATAP benefits because she was allegedly not working and needed the assistance to provide a home for the girls.[7] Hasty did not apply for benefits.

Pursuant to 7 AAC 45.225(b), the eligibility worker assigned to Lauth's case calculated the number of hours in a month that the children spent with each parent. Because Lauth had the children for slightly fewer hours during the month than Hasty, the worker denied Lauth's application. Lauth requested a hearing.

At the hearing, Lauth argued that an hour-by-hour accounting of the children's time did not fairly represent who actually took care of the children's needs. She argued that in joint custody situations such as hers, the agency should use the multi-factor test in 7 AAC 45.225(d), which required a more careful scrutiny of the actual caretaking arrangements.

The hearing officer agreed and applied the subsection .225(d) factors to Lauth's custody arrangement. The hearing officer found that the children physically spent sixty percent of the time with their father but that Lauth provided sixty percent of the "guidance, discipline, and physical and financial needs" of the children. She also found that the other three factors did not favor either parent. Balancing the factors together, the hearing officer concluded that Lauth and Hasty were exactly fifty percent responsible for the children. The hearing officer then denied Lauth's claim because she had failed to show by a preponderance of the evidence that she was the *primary* caretaker of the children.

Lauth appealed to the director of the agency, arguing that the hearing officer had not weighed the factors properly and that she was the children's primary caretaker. The director concluded that the denial was appropriate but that the hearing officer had used the wrong standard. The director explained that the multi-factor subsection .225(d) test addressed situations where there were competing ATAP claims from two caretaker relatives. In situations such as this one, where only one parent applies, the "governing regulation" is subsection .225(b) which requires an hour-by-hour count of the children's cus-

---

7. Lauth had previously applied for ATAP benefits on October 6, 1997. Her application was denied because she did not have housing or visitation rights at that time.

tody time. The director therefore concluded that because Lauth did not have the children for more than fifty percent of the month, she was not entitled to ATAP benefits.

Lauth appealed the director's final agency decision to the superior court.[8] Lauth once again argued that she was entitled to ATAP benefits because she provided the majority of care to the children. She argued that determining eligibility for ATAP benefits based on a rigid hour-by-hour custody count was irrational and inconsistent with the governing statutes. In a footnote, she also asserted that the state agency's policy of applying subsection .225(d) to families where both parents are applying for benefits and subsection .225(b) to families where only one parent is applying for benefits violates equal protection.

The state responded that the agency had broad statutory authority to implement, interpret, and administer the ATAP program and that its regulations and actions were reasonable. The state justified the agency's decision to rely on subsection .225(b) rather than subsection .225(d) by arguing that

> [t]o the extent division staff can avoid having to make these subjective determinations, it should.... Thus, it is only where you have two people competing for benefits that a strict evaluation of where the children spend the most time may not be enough. However, the situation at hand is not one where two parents are vying for benefits and thus that regulation [.225(d) ] is not applicable.

The state did not otherwise respond to Lauth's equal protection challenge.

8. Originally, Lauth filed suit in superior court to obtain a preliminary injunction to require the agency to provide her with benefits. But, in the meantime, she had obtained slightly more custody hours with the girls. The Division of Public Assistance calculated the new custody hours and determined that Lauth was now eligible for ATAP. Lauth then withdrew her request for the injunction and converted her complaint into an administrative appeal of the director's decision regarding the still disputed months of October 1997 to March 1998.

9. See Board of Trade, Inc. v. State, Dep't of Labor, Wage & Hour Admin., 968 P.2d 86, 89 (Alaska 1998).

Reviewing the ATAP regulations under a deferential standard, the superior court held that the regulations were reasonable and not arbitrary. The court also found that Lauth had not met the burden of demonstrating a constitutional violation. The court therefore affirmed the agency's denial of benefits to Lauth.

Lauth now appeals.

## III. STANDARD OF REVIEW

This appeal challenges the validity and constitutionality of an administrative regulation. We exercise our independent judgment in determining the validity of an administrative regulation and in interpreting the underlying statute.[9] But we will not substitute our judgment for that of the agency with regards to the efficacy or wisdom of the regulation.[10] "We limit our review of an administrative regulation to: (1) whether the regulation is reasonable and not arbitrary; and (2) whether the regulation is consistent with the statute and reasonably necessary to its purposes."[11] We review an agency's interpretation of its own regulation under the reasonable basis standard, deferring to the interpretation unless it is "plainly erroneous and inconsistent with the regulation."[12]

Lauth's constitutional challenge raises questions of law which we review de novo, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[13] We similarly apply our independent judgment when determining whether an issue has been waived below due to inadequate briefing.[14]

10. See id.

11. Id.

12. Id.

13. Wilkerson v. State, Dep't of Health and Social Servs., Div. of Family and Youth Servs., 993 P.2d 1018, 1021 (Alaska 1999) (quoting Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

14. See id.

## IV. DISCUSSION

### A. The Regulatory Definition of "Physical Custody" Is Reasonable, Not Arbitrary, and Consistent with the Governing Statutes.

#### 1. The agency adopted the AFDC standard.

Under the now defunct AFDC program, a needy parent who shared custody of dependent children with a non-needy parent had to show that the children "lived with" the needy parent and were "deprived of parental support and care" from the other parent.[15] The Alaska AFDC manual translated these eligibility criteria into a determination of how many days in a month each parent had custody of the children. The needy parent had to have custody of the children for more than fifty percent of the month in order to be eligible for AFDC benefits.

■ The new ATAP statute does not define an applicant's eligibility in terms of "deprivation" or "living with." Instead, it simply conditions an applicant's eligibility on his or her "physical custody" of the dependent children.[16] Yet despite the difference in terminology between the two statutes, the agency adopted the AFDC methodology directly into the administration of the new program, describing "physical custody" in terms of the amount of days in the month each parent has custody.[17] Thus, in order to qualify for ATAP benefits, the applicant parent who shares custody with a non-applicant parent must demonstrate that the applicant parent has custody of the children more than fifty percent of the time.

#### 2. The agency's regulation is not arbitrary.

Lauth argues that the agency's regulation is arbitrary and unreasonable because it represents the agency "cutting and pasting" the old standard into the new program without any deliberation or careful thought. She further argues that this court should use a de novo review because there is very little evidence that the agency used its expertise when it imported the AFDC standard verbatim into the new program.

But an agency does not need to directly invoke its expertise to trigger a deferential review. At times, an agency's expertise in adopting a particular regulation may be implicit rather than explicit. Here, the legislature has granted the agency broad authority to "implement, interpret, and administer the provisions of [the ATAP statute]."[18] The agency chose to interpret the term "physical custody" in terms of the custody time—sometimes determined by an hour-by-hour count—that the applicant parent has. This appears to be a reasonable interpretation of the term and we see no reason to assume that the agency adopted it arbitrarily, without any careful consideration or thought.

Moreover, there is no particular reason why the agency should be barred from borrowing methods from AFDC. Although AFDC was repealed, it was not repealed on the basis of its eligibility criteria. AFDC was repealed because Congress intended to reform the welfare system, creating more work incentives and granting the states greater freedom in designing and implementing their welfare systems.[19] Moreover, AFDC was repealed by Congress, not by the Alaska Legislature. The ATAP program is the first time that the Alaska Legislature has enacted a comprehensive welfare statute. The legislature's use of the word "physical custody" rather than "deprivation" or "living with" is therefore less significant than if the AFDC statute had been a state statute repealed by this legislature. Thus there is no particular reason to assume that by using the word "physical custody," the legislature intended to prohibit the agency from re-adopting the AFDC eligibility standards.

■ Administrative regulations are presumed to be valid.[20] The agency's definition

---

15. *See* 42 U.S.C. § 606(a)-(b).

16. AS 47.27.010.

17. *See* 7 AAC 45.225.

18. AS 47.27.005(8).

19. *See* Pub.L. No. 104–193, 110 Stat. 2105.

20. *See Church v. State, Dep't of Rev.*, 973 P.2d 1125, 1128 n. 3 (Alaska 1999).

of physical custody need not be the best definition, it merely needs to be reasonable and not arbitrary. This regulation qualifies.

### 3. *The regulation is consistent with the governing statutes.*

Lauth argues that the agency's requirement that the applicant parent have physical custody more than fifty percent of the month is inconsistent with the general preference for "equal access" shared custody expressed in the custody statutes. She points out that under AS 25.20.070, interim custody is supposed to be as equal as possible:

> Unless it is shown to be detrimental to the welfare of the child, the child shall have, to the greatest degree practical, equal access to both parents during the time that the court considers an award of [permanent] custody.

Under 7 AAC 45.225, a needy parent who complies with this statute and shares exactly equal custody time with the non-needy parent is ineligible for benefits because she does not have the children *more* than fifty percent of the time.

But the regulation is not necessarily inconsistent with AS 25.20.070. The statute's caveat—"the greatest degree practical"—implicitly recognizes that it is often impossible for parents to have access that is exactly equal. One parent will usually have slightly more custody than the other. These slight incremental custody differences may be unimportant in the custody perspective, but they acquire significance in the ATAP program. The agency needs to create certain criteria to distinguish between competing applicants and to ensure that the benefits are distributed only to caretakers for needy children who fit the eligibility requirements.

Lauth argues that the agency should have interpreted the term "physical custody" to mean simply "joint physical custody." Under this interpretation, a parent who applies alone for benefits is entitled to the benefits if she has "joint physical custody," regardless of the fact that her joint custody may be fifty percent or even a little under. Lauth argues that the agency should only do a custody time count when both parents apply for benefits and the agency must find criteria for paying one rather than the other. Moreover, even then, the custody count should only be one factor among many in determining which among the competing parents is the actual primary caregiver of the children.

While Lauth's interpretation may be reasonable, that does not mean that the regulation in place is invalid.[21] Here, the regulation is a reasonable definition of the term "physical custody" and is not inconsistent with the custody statutes. Thus we uphold the regulation.

### B. *The State's Policy of Applying Different Eligibility Criteria to the Determination of "Physical Custody" Depending on Whether One or Both Parents Apply Does Not Violate Equal Protection.*

■ Article I, section 1 of the Alaska Constitution provides that "all persons are equal and entitled to equal rights, opportunities and protection under the law."[22] Lauth argues that this clause is violated by the agency's regulation because it irrationally distinguishes between a poor parent where only one parent applies for benefits (and physical custody is tested by the strict, greater than fifty percent rule of subsection .225(b)) and a poor parent where both parents apply for benefits (when the more flexible test of subsection .225(d) is applied). Lauth contends that whether or not the other parent also applies for benefits is a mere fortuity and different tests of physical custody should not depend on this fortuity.

The state argues that Lauth does not have an equal protection claim because she is not similarly situated with the class of applicants that receive different treatment. The state relies on *Rutter v. State*,[23] in which we held that the basis of any equal protection claim is

---

**21.** *See Board of Trade, Inc. v. State, Dep't of Labor, Wage Hour Admin.*, 968 P.2d 86, 89 (Alaska 1998).

**22.** On appeal, Lauth's equal protection claims rely exclusively on the Alaska Constitution. She does not invoke the federal constitution.

**23.** 963 P.2d 1007, 1013 (Alaska 1998).

that similarly situated persons are being treated differently. The state points out that AS 47.27.005(1) requires the agency to provide ATAP benefits to *"needy children* and their families," and it is the children's needs, not the parents', which determine ATAP eligibility. The state argues that children who have one economically secure parent who is providing for their care at least fifty percent of the time are not needy children and thus are different from children who have no economically secure parents and who are living in poverty 100 percent of the time.

Implicit in the state's argument is the assumption that in a situation where there is shared custody and both parents are poor and economically eligible to receive public assistance, both will normally apply. This assumption seems reasonable. Thus, subsection .225(b) normally speaks to situations in which one parent is economically eligible for benefits and the other is not, whereas subsection .225(d) addresses situations in which both parents are economically eligible for benefits. It is, therefore, not a mere fortuity when only one parent applies for benefits, rather it is because the non-applying parent is ordinarily not economically eligible to receive benefits.

We agree with the state that children with one economically secure parent who is providing for their care at least fifty percent of the time are not similarly situated with children having both parents economically eligible for benefits. We therefore agree with the state that no viable equal protection case has been established by Lauth.

█  In so concluding we recognize, as we did in *Shepherd v. State, Dep't of Fish and Game,* that finding

> two classes are not similarly situated necessarily implies that the different legal treatment of the two classes is justified by the differences between the two classes. Such a conclusion reflects in shorthand the analysis traditionally used in our equal protection jurisprudence. We have generally used this abbreviated analysis only in clear cases. . . . [24]

Here, as in *Shepherd,* we regard this as a clear case. The difference in treatment between the two categories is amply justified by the difference in economic circumstances explained above.

## V. *CONCLUSION*

For the foregoing reasons, the judgment of the superior court is AFFIRMED.

CARPENETI, Justice, not participating.

---

**24.**  897 P.2d 33, 44 n. 12 (Alaska 1995) (citations omitted).