STATE of Alaska; Marcia Kennai, in her official capacity as Deputy Commissioner of the Office of Children's Services of the Alaska Department of Health and Social Services; and the Office of Children's Services of the Alaska Department of Health and Social Services, Appellants,

v.

David and Joyce JACOB, Appellees.

No. S–13226.

Supreme Court of Alaska.

Aug. 28, 2009.

Joanne M. Grace, Assistant Attorney General, Anchorage, Talis J. Colberg, Attorney General, and Richard A. Svobodny, Acting Attorney General, Juneau, for the Appellants.

Daniel G. Rodgers, Alaska Immigration Justice Project, Anchorage, for the Appellees.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, WINFREE, and CHRISTEN, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

David and Joyce Jacob sued the State of Alaska, Office of Children's Services (OCS) in March 2004 for declaratory and injunctive relief regarding OCS's failure to provide them notice of their grandchildren's CINA and permanency proceedings. The superior court dismissed the suit, but this court reversed and remanded for entry of declaratory judgment on one of the Jacobs' claims. After the declaratory judgment was entered, the Jacobs filed a motion for full attorney's fees under AS 09.60.010(c) for prevailing on a constitutional claim, or, in the alternative, for enhanced fees under Alaska Civil Rule 82. The superior court awarded the Jacobs full fees or, as an alternative, half of their total fees under Rule 82(b)(3). OCS appeals. We affirm the prevailing party determination, reverse the award of full fees, and affirm the alternative award of enhanced Rule 82 fees.

1. 177 P.3d 1181 (Alaska 2008).

2. *Id.* at 1183 (footnotes omitted). We noted that the facts as recited were "taken largely from the

## II. FACTS AND PROCEEDINGS

We described the facts underlying this case in *Jacob v. State, Department of Health and Social Services, Office of Children's Services (Jacob I )* [1]:

Minors A.K., D.L., and E.H. are the grandchildren of David and Joyce Jacob. The mother of the three children struggled with drug dependency and as a result the Jacobs often assumed care of their grandchildren. In 1997 a Washington state court granted the Jacobs joint custody of the children with their mother. In 1999 the Jacobs agreed that the children could move to Alaska with their mother because she had been sober for quite some time. But in 2000 the mother relapsed, and in October 2000 the children were taken into custody by the Office of Children's Services (OCS).

When the Jacobs learned from the children's mother in December 2000 that OCS had custody of the children, they immediately sent a letter to OCS stating that they were the children's grandparents, had joint custody, and wanted OCS to place the children in their care. OCS did not respond to the letter and the children remained in foster care. Between December 2000 and March 2004 the Jacobs made dozens of attempts to communicate with OCS, including leaving messages for the caseworker and the caseworker's supervisor, Tim Fox. On one occasion, Fox allegedly told the Jacobs that they were too old to care for the children.

Over the next three and one-half years OCS never sent the Jacobs notice of any court hearings regarding their grandchildren's CINA proceedings, including those that occurred after the September 2001 effective date of amendments to the CINA statutes requiring grandparent notice. During that time period the Jacobs never filed a motion to formally intervene in their grandchildren's CINA cases and never filed a petition requesting that the children be placed in their care.[2]

Jacobs' complaint." *Id.* at 1183 n. 1. These facts are not contested here.

The Jacobs filed a complaint in the superior court in March 2004, alleging these facts and requesting declaratory and injunctive relief. They sought a declaration that OCS violated their rights by failing to place their grandchildren with them and by failing to give them notice of hearings in their grandchildren's CINA hearings. They also sought an injunction compelling OCS to provide to the Jacobs and "all other grandparents similarly situated" written notice of and the opportunity to be heard at CINA hearings, as well as immediate placement of the Jacobs' grandchildren with the Jacobs "until and unless [OCS] show[s] by clear and convincing evidence that placement of the children with [the Jacobs] will result in physical or mental injury to the children."

OCS filed a motion to dismiss, arguing that the superior court lacked jurisdiction because the court presiding over the CINA proceedings had exclusive jurisdiction over the claims presented. OCS also argued for dismissal for failure to state a claim for which relief may be granted, reasoning that the Washington state custody order on which the Jacobs relied was not entitled to full faith and credit because it had not been registered in Alaska. Finally, OCS argued that the Jacobs' chosen venue was improper.

The Jacobs filed a cross-motion for partial summary judgment. They contested OCS's arguments for dismissal and asked the superior court to enter judgment on the issue of whether OCS violated their rights under AS 47.10.030(d), AS 47.10.080(f), and AS 47.14.100(e).[3] The Jacobs argued that there was no factual dispute regarding OCS's failure to comply with the statutory notice requirements and that those rights "trigger

due process concerns." They then described the information they contended OCS needed to include in its written notice to comply with due process.

In response, OCS argued that because AS 47.10.030(d) did not go into effect until September 23, 2001, after the adjudication and disposition orders were entered in the grandchildren's CINA case, prior failures to send notice to the Jacobs did not violate that statute. OCS conceded that AS 47.10.080(f) was in effect when the permanency hearings for the Jacobs' grandchildren occurred but argued that the proper remedy for violation of that provision was intervention in the existing CINA proceeding. Regarding the Jacobs' due process argument, OCS responded that "[a]ny 'due process' issues are covered by the [notice] statute," so there was no basis for "expand[ing] the obligation of the Department beyond what is mandated by the statute."

In August 2004 Superior Court Judge John Reese dismissed the Jacobs' case.[4] Judge Reese observed that "the department's failure to give them notice is a serious oversight," but concluded that "the Jacobs' due process rights have not been violated, since . . . they may request placement in the CINA case."

The Jacobs intervened in their grandchildren's CINA cases, but they also appealed Judge Reese's ruling to this court.[5] We held in *Jacob I* that the Jacobs were entitled to declaratory relief.[6] We vacated the order dismissing the Jacobs' complaint and remanded for entry of a declaration of the Jacobs' statutory rights,[7] holding that "[a]

---

3. AS 47.10.030(d), which went into effect on September 23, 2001, ch. 43, §§ 1–6, SLA 2001, requires notice to grandparents of CINA proceedings if they request it or if OCS knows the child has a grandparent and has the grandparent's address. AS 47.10.080(f) states that grandparents entitled to notice under AS 47.10.030(d) are also entitled to notice of permanency hearings. The version of AS 47.14.100(e) in place while the Jacobs' grandchildren's CINA cases were proceeding prohibited OCS from placing a child in a foster home if a relative requested placement of the child unless there was sufficient evidence that such a placement would be unsafe or otherwise inappropriate. Former AS 47.14.100(e) (2004).

4. The superior court ruled that the Jacobs' summary judgment motion was moot because the court was granting OCS's motion to dismiss.

5. *See Jacob I*, 177 P.3d at 1184 (noting the Jacobs' intervention in the CINA proceedings).

6. *Id.* at 1184, 1186.

7. *Id.* at 1188. Our analysis did not name the statutes to which we referred, but our facts section cited and quoted AS 47.10.030(d). *See id.* at 1183–86.

declaratory judgment from the superior court that acknowledges the failure of OCS to meet its statutory duty to the Jacobs and that specifically recognizes the Jacobs' rights to receive notice of future OCS hearings relating to their grandchildren will materially benefit the Jacobs." [8] We noted that "the Jacobs never sought a declaration specifically regarding their due process rights" and so we "decline[d] to comment on this issue extensively," but we nevertheless observed that "notice of proceedings and a meaningful right to be heard are essential to due process." [9] We held that three of the Jacobs' other requests for injunctive relief on their own behalf were moot.[10] By intervening in their grandchildren's CINA proceedings, the Jacobs "received the first two categories of injunctive relief that they sought: notice of CINA proceedings and an opportunity to be heard at permanency hearings." [11] Regarding the third category, "placement of the children," the Jacobs decided not to continue to pursue full custody of two of the children and they were in a position to be heard regarding placement of the third.[12] We "decline[d] to address the Jacobs' request for injunctive relief on behalf of similarly situated grandparents" because the Jacobs had not filed a class action lawsuit and because at oral argument they "appeared to retreat from this position to some degree." [13]

After our *Jacob I* opinion was published, Superior Court Judge Jack W. Smith entered declaratory judgment on behalf of the Jacobs. The declaration read, in its entirety:

> Plaintiff[s'] right to notice of Child in Need of Aid (CINA) proceedings concerning their grandchildren was violated by the Office of Children's Services (OCS). In September 2001 amendments to AS 47.10.030(d) required notice to grandparents with Plaintiff[s'] status. That notice was not provided to Plaintiffs.

> Plaintiffs have a right and are entitled to notice under AS 47.10.030(b) and (d) of any current and future CINA proceedings involving their grandchildren.

In April 2008 the Jacobs filed a motion for attorney's fees.[14] The Jacobs argued they were the prevailing parties because they had "won and obtained a judgment in their favor." They asserted that they were entitled to full fees under AS 09.60.010(c), which they contended "provides for an award of full fees in cases concerning a constitutional right." They claimed that this case was in that category, quoting this court's statements in *Jacob I* about due process, as well as other cases discussing grandparents' due process rights. In the alternative, they argued that they were entitled to enhanced Civil Rule 82 fees because

> this case was very complex (Civil Rule 82(b)(3)(A)); the amount of attorney time, the number of attorney[s] used, and Alaska Legal Services' minimizing of fees was remarkable (Civil Rule 82(b)(3)(C)—(E)[ ]); plaintiffs' claims were reasonable (Civil Rule 82(b)(3)(F)[ ]); the matters at stake were significant (Civil Rule 82(b)(3)(H)); a fee award will not be "onerous" to [the] State (Civil Rule 82(b)(3)(I)); and equity suggests a fee enhancement is appropriate (since the plaintiffs pursued this claim, despite their age and infirmities, on behalf of all future grandparents so that they would not experience what the Jacobs had to endure[ ]) (Civil Rule 82(b)(3)(K)[ ]).

The Jacobs asserted that the requested hourly rates were reasonable and calculated that a full award would be in the amount of $96,940. Attached to the motion were time records for each of the Jacobs' attorneys.

OCS opposed the Jacobs' motion arguing that the Jacobs were not the prevailing parties because they only prevailed on "the question of whether they were entitled to a

---

8. *Id.* at 1186.

9. *Id.* at 1185.

10. *Id.* at 1186.

11. *Id.* at 1187.

12. *Id.*

13. *Id.* We also "decline[d] to address … hypothetical claims" about damages. *Id.* at 1187–88.

14. The Jacobs were represented by the Alaska Legal Services Corporation before this motion, but the Alaska Immigration Justice Project represented them in this request for fees.

declaration that they should have received notice of the CINA proceedings, a statutory right that was never in dispute" and that was not the "main issue" in the case. OCS argued that the Jacobs were not entitled to fees under AS 09.60.010(c) because they "did not bring an action to establish, protect, or enforce a constitutional right" and "had not raised or established a due process violation." OCS also contended that some of the Jacobs' attorneys' billing entries were inappropriately included, making the $96,940 figure too high.[15] OCS further argued that because "merely restat[ing] nearly every enhancement factor" constitutes failure to adequately brief the issue of enhanced fees, the Jacobs waived their request for an award under Rule 82(b)(3) and so were entitled to at most twenty percent of their actual reasonable fees.

The Jacobs replied, reasserting their substantive arguments but conceding that some of the billing entries should not have been included. They recalculated their recoverable fees and reduced their request to $27,334.

In June 2008 Judge Smith granted the motion for attorney's fees and awarded full fees in the revised amount of $27,334. In the alternative, "even if there were no special statutory fee provision for constitutional cases," Judge Smith wrote that he would award the Jacobs enhanced fees in the amount of $13,667—fifty percent of the fees requested—because of various factors supporting enhancement, such as the complexity of the case, the amount of time the attorneys spent on it, the number of attorneys used,

the extent to which Alaska Legal Services minimized its fees, the reasonableness of plaintiffs' claims, the significance of the matters at stake, and the fact that "a fee award will not be 'onerous' to [the] State."

OCS appeals the award of attorney's fees.

## III. STANDARD OF REVIEW

We "exercise our independent judgment in reviewing whether a trial court has applied the appropriate legal standard in making its prevailing party determination."[16] But we "review a superior court's determination of prevailing party status and attorney's fees for abuse of discretion"[17] and "will overturn such determinations only if they are manifestly unreasonable."[18] The decision to award enhanced fees is also reviewed for abuse of discretion.[19]

As to reviewing an award under AS 09.60.010(c), "[t]he independent standard of review ... applies to considering whether the trial court properly applied the law when awarding attorney's fees."[20]

We use "independent judgment when determining whether an issue has been waived below due to inadequate briefing."[21]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion by Ruling that the Jacobs Prevailed in this Case.

For the Jacobs to have been eligible for an award of attorney's fees under either AS 09.60.010(c) or Alaska Civil Rule 82, the

---

**15.** Some of the entries were related to work done after the dismissal of the trial court case, work beyond the parameters of the case, work that need not have been done by attorneys, and work listed without any description.

**16.** *Halloran v. State, Div. of Elections,* 115 P.3d 547, 550 (Alaska 2005) (citing *Shepherd v. State, Dep't of Fish & Game,* 897 P.2d 33, 44 (Alaska 1995)).

**17.** *Braun v. Denali Borough,* 193 P.3d 719, 726 (Alaska 2008) (citing *Bromley v. Mitchell,* 902 P.2d 797, 804 (Alaska 1995)); *see also Hickel v. Se. Conference,* 868 P.2d 919, 927–28 (Alaska 1994) ("Both the award of attorney's fees to the prevailing party and the determination of prevailing party status are within the broad discre-

tion of the trial court." (citing *Adoption of V.M.C.,* 528 P.2d 788, 795 (Alaska 1974)) ).

**18.** *Braun,* 193 P.3d at 726 (citing *Bromley,* 902 P.2d at 804).

**19.** *See Ware v. Ware,* 161 P.3d 1188, 1198 (Alaska 2007).

**20.** *DeNardo v. Cutler,* 167 P.3d 674, 677 (Alaska 2007) (quoting *Ellison v. Plumbers & Steam Fitters Union Local 375,* 118 P.3d 1070, 1073 (Alaska 2005)) (internal quotation marks omitted).

**21.** *Lauth v. State,* 12 P.3d 181, 184 (Alaska 2000) (citing *Wilkerson v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.,* 993 P.2d 1018, 1021 (Alaska 1999)).

superior court must have appropriately declared them to be the prevailing party in this case.[22]

OCS argues that the Jacobs were not the prevailing parties because the ground on which the Jacobs prevailed—the right to notice of CINA proceedings—was "something that was never in dispute." OCS also contends that it prevailed on the main issue because the Jacobs were unable to obtain a "declaration that applied to all grandparents." OCS reasons that such a declaration must have been central to the Jacobs' case or they would not have (1) filed a suit separate from their grandchildren's CINA proceedings, or (2) emphasized in their briefing the systemic nature of OCS's failure to provide notice to grandparents.

But the Jacobs argue that they prevailed on the main issue, which was "the opportunity to be heard," and cite our holding in *Jacob I* that they were entitled to declarations that OCS had violated their statutory notice right and that they had a right to notice in future CINA proceedings. The Jacobs concede that "no order was issued compelling OCS to follow the law with respect to other grand-

parents" but reassert that they "obtained their first objective, an order pertaining to their own grandchildren." [23]  And they point out that this court "has already held that a declaratory judgment would materially benefit the Jacobs."

█  The superior court did not make any statement regarding prevailing party status in its attorney's fees order, but it is implicit in the court's award that the court considered the Jacobs to be the prevailing parties.[24] As noted above, "[d]esignation of the prevailing party 'is committed to the broad discretion of the trial court' "[25] and so "will be overturned only if ... manifestly unreasonable."[26]

█  It is firmly established that "[t]he prevailing party is the one who has successfully prosecuted or defended against the action, the one who is successful on the 'main issue' of the action and 'in whose favor the decision or verdict is rendered and the judgment entered.' "[27]  Furthermore, "[a] plaintiff may prevail even if he or she fails to recover all the relief prayed for."[28]

---

**22.**  *See* AS 09.60.010(c) ("[T]he court (1) shall award ... full reasonable attorney fees and costs to a claimant, who, as plaintiff ... *has prevailed* in asserting the [state or federal constitutional] right ...." (emphasis added)); Alaska R. Civ. P. 82(b)(2) ("In cases in which the prevailing party recovers no money judgment, the court ... shall award *the prevailing party* in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred." (emphasis added)).

**23.**  As to their third original objective, the Jacobs reason that "[t]he fact that the Jacobs successfully intervened in their grandchildren's CINA cases and reached agreement with OCS [that included placement of the children outside of their home] does not mean that they did not prevail in this case."

**24.**  Trial courts should make findings explaining their prevailing party determinations when the issue is in dispute. It is difficult to effectively review a trial court's decision without understanding its reasoning. *Cf. Curran v. Hastreiter,* 579 P.2d 524, 531 (Alaska 1978) (remanding to the trial court where it did not make a prevailing party determination and relying on a prior case also remanding because "[w]e are confronted with the difficulty of not knowing whether the court denied the fee in the exercise of its discretion or under the mistaken belief that Cooper

was not the prevailing party" (quoting *Cooper v. Carlson,* 511 P.2d 1305, 1311 (Alaska 1973) (internal quotation marks omitted) ) ).  In this case, we need not remand because the reason Judge Smith found the Jacobs to be the prevailing parties is clear: we directed the trial court to enter declaratory relief in their favor. *Jacob v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.,* 177 P.3d 1181, 1184, 1186 (Alaska 2008).

**25.**  *Hillman v. Nationwide Mut. Fire Ins. Co.,* 855 P.2d 1321, 1326 (Alaska 1993) (quoting *Apex Control Sys., Inc. v. Alaska Mech., Inc.,* 776 P.2d 310, 314 (Alaska 1989)).

**26.**  *Progressive Corp. v. Peter ex rel. Peter,* 195 P.3d 1083, 1092 (Alaska 2008) (citing *Interior Cabaret, Hotel, Rest. & Retailers Ass'n v. Fairbanks N. Star Borough,* 135 P.3d 1000, 1002 (Alaska 2006)).

**27.**  *Progressive Corp.,* 195 P.3d at 1092 (quoting *Hillman,* 855 P.2d at 1327); *see also Blumenshine v. Baptiste,* 869 P.2d 470, 474 (Alaska 1994) (citing seven cases to support the statement that "[w]e have consistently held that the prevailing party is the one who prevailed on the main issues").

**28.**  *Progressive Corp.,* 195 P.3d at 1092 (citing *Blumenshine,* 869 P.2d at 474).

OCS disregarded its statutory obligation to provide notice to the Jacobs, and we held in *Jacob I* that the Jacobs were entitled to redress for that violation.[29] It is reasonable to conclude that the failure to provide notice to the Jacobs regarding their grandchildren's CINA proceedings was the main issue in the case. As noted above, the Jacobs need not have prevailed on all of their claims to be the prevailing parties.[30] Though OCS now argues that this issue was "never in dispute," it chose to litigate this case for years. OCS did not concede until oral argument preceding our 2008 opinion in *Jacob I* that declaratory relief based on the 2001 notice statute was appropriate.[31] That argument took place at least seven years after OCS initiated CINA proceedings, almost four years after the Jacobs filed their complaint, and at least three years after the superior court called the failure to provide notice a "serious oversight." It is not an abuse of discretion to conclude that the Jacobs prevailed in this matter.

### B. The Jacobs Are Not Entitled to Fees Under AS 09.60.010(c).

■ Because we affirm the determination that the Jacobs were entitled to fees as the prevailing parties, we next review the superior court's award, beginning with its grant of full fees under AS 09.60.010(c).[32] That statute reads, in relevant part:

> In a civil action or appeal concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska, the court

(1) shall award, subject to (d) and (e) of this section, full reasonable attorney fees and costs to a claimant, who, as plaintiff, counterclaimant, cross claimant, or third-party plaintiff in the action or on appeal, has prevailed in asserting the right.

OCS argues that the Jacobs did not prevail in asserting a constitutional right because they did not make a due process claim in their complaint. Though OCS acknowledges that the Jacobs "raised the suggestion of 'due process concerns' in seeking partial summary judgment," OCS argues that the contents of that "suggestion" were not sufficient to "establish a constitutional right." OCS asserts that this court did not reach the due process issue in *Jacob I* and that our comment on the constitutional issue is not sufficient for an AS 09.60.010(c) award. The Jacobs believe that "[f]ull reasonable fees under AS 09.60.010(c) are ... appropriate" because they made arguments regarding due process in their summary judgment motion, to which OCS responded and on which the superior court ruled. The Jacobs characterize our opinion in *Jacob I* as taking "the due process issues into account when ruling in favor of the Jacobs on the statutory declaratory judgment issue."

■ We agree with OCS. *Jacob I* made clear that we took seriously the due process concerns implicated by OCS's failure to provide notice to the Jacobs,[33] but we declined to rule on those issues because the Jacobs had not raised them.[34] Where no party has prop-

---

**29.** *See Jacob I,* 177 P.3d at 1186.

**30.** *Cf. Progressive Corp.,* 195 P.3d at 1093 ("The fact the Peters only recovered on one claim is not controlling.... Even if a party prevails on only one of the main issues, it is not necessarily ineligible for being considered the prevailing party.") (footnote omitted); *cf. Blumenshine,* 869 P.2d at 474 ("Although Baptiste did not prevail on every issue in this case, he succeeded in obtaining the full damages requested for .... the main issues [and therefore] Baptiste was the prevailing party for the purpose of awarding attorney's fees.").

**31.** *See Jacob I,* 177 P.3d at 1184.

**32.** The superior court did not include in its order an explanation of the basis on which it awarded full fees, but the parties' understanding of the

basis for the award is logical; the court appears to have applied AS 09.60.010(c).

**33.** *See Jacob I,* 177 P.3d at 1185 ("declin[ing] to comment" on due process "extensively" but noting "that notice of proceedings and a meaningful right to be heard are essential to due process" and "there are situations in which the right to intervene in the late stages of a CINA case will be insufficient to cure the prejudice of the initial due process violation").

**34.** *See id.* at 1185–86 (declaring that "[b]ecause the Jacobs never sought a declaration specifically regarding their due process rights, we decline to comment on this issue extensively" and discussing the entry of declaratory judgment that OCS failed "to meet its statutory duty").

erly raised a constitutional claim, an award of fees under AS 09.60.010(c) is not appropriate.

## C. The Jacobs Are Entitled to the Alternative Award of Enhanced Rule 82 Fees.

In cases in which the prevailing party recovers no money judgment, Alaska Civil Rule 82(b)(2) provides for the recovery of thirty percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred if the case was resolved at trial, and twenty percent if the case did not go to trial. As an alternative to its award of full fees, the superior court granted fifty percent of the Jacobs' requested fees based on the enhancement factors in Alaska Civil Rule 82(b)(3). That rule reads:

(3) The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:

(A) the complexity of the litigation;

(B) the length of trial;

(C) the reasonableness of the attorneys' hourly rates and the number of hours expended;

(D) the reasonableness of the number of attorneys used;

(E) the attorneys' efforts to minimize fees;

(F) the reasonableness of the claims and defenses pursued by each side;

(G) vexatious or bad faith conduct;

(H) the relationship between the amount of work performed and the significance of the matters at stake;

(I) the extent to which a given fee award may be so onerous to the nonprevailing party that it would deter similarly situated litigants from the voluntary use of the courts;

(J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and

(K) other equitable factors deemed relevant.

If the court varies an award, the court shall explain the reasons for the variation.

### 1. The Jacobs did not waive their right to enhanced fees.

■ OCS cites *Sidney v. Allstate Insurance Co.*[35] and argues that the Jacobs waived the argument for enhanced fees by "fail[ing] to make any argument [for enhanced fees] until their reply brief" to the superior court. OCS is concerned that accepting the Jacobs' initial argument for enhanced fees would allow any party who "merely cited" those factors to inappropriately shift the burden to the nonmoving party to argue against enhanced fees even though no presumption for fees should exist. The Jacobs concede that their "argument in their opening brief is short," but they contend that "it sufficiently raised the fee enhancement issue," in contrast to the situation in *Sidney*.

■ The superior court granted enhanced fees and thus necessarily concluded the Jacobs had not inadequately requested them. Waiver is a legal issue that this court reviews de novo,[36] so we need not have the superior court's reasoning before us to rule on this question.

We conclude that the Jacobs did not so thoroughly fail to argue for enhanced fees that they waived the claim. *Sidney* is distinguishable. In that case, we rejected a party's contention that she should receive full fees because the party had "provided no justification for varying the presumptive fee award, offered no authority in support of her argument, and pointed to no authority in support of her request."[37] Here, though we

---

**35.** 187 P.3d 443, 456 (Alaska 2008).

**36.** *Lauth v. State,* 12 P.3d 181, 184 (Alaska 2000) ("We ... apply our independent judgment when determining whether an issue has been waived below due to inadequate briefing." (citing *Wilkerson v. State, Dep't of Health & Soc. Servs., Div. of*

*Family & Youth Servs.,* 993 P.2d 1018, 1021 (Alaska 1999))).

**37.** *Sidney,* 187 P.3d at 456 (citing *State Farm Mutual Auto. Ins. Co. v. Lawrence,* 26 P.3d 1074, 1076 (Alaska 2001)).

believe the Jacobs could and probably should have more thoroughly briefed their arguments for enhanced fees, the Jacobs did point to specific Rule 82(b)(3) factors they contended apply and OCS responded. On this record, we do not conclude that the Jacobs waived their claim for enhanced fees. Thus, we reach the merits of the enhanced fee award.

## 2. The superior court did not abuse its discretion in awarding enhanced fees to the Jacobs.

OCS contends that none of the Rule 82(b)(3) enhancement factors applies here. The Jacobs argue that the superior court was correct to find that several factors support an award of enhanced fees. We will overturn an award of enhanced fees only where the trial court has abused its discretion.[38] We do not believe the superior court's alternative award here was unreasonable because two enhancement factors weigh strongly in favor of the court's ruling.

First, we believe factor (H), "the relationship between the amount of work performed and the significance of the matters at stake," applies. The superior court relied on this factor, writing that "the matters at stake were significant." We agree that the notice issue the Jacobs raised is important. The placement of children and the involvement of grandparents in their grandchildren's lives are not matters to be taken lightly. Neither is a state agency's failure to comply with a legislative mandate. The $27,334 in fees that the Jacobs requested after years of pursuing litigation against OCS to enforce their statu-

tory right is reasonable in light of the significance of the case.

Second, factor (F), "the reasonableness of the claims and defenses pursued by each side," is relevant here. Reliance on this factor is appropriate where the nonprevailing party has made unreasonable arguments.[39] The defenses on which OCS relied in responding to the Jacobs' complaint—including that the Washington state custody order should not receive full faith and credit and that the Jacobs had chosen improper venue—were unreasonable. OCS clearly failed to comply with a statutory requirement in a manner that impacted the Jacobs' involvement in their grandchildren's lives. It is uncontested that the Jacobs called this fact to OCS's attention dozens of times.[40] Rather than correcting its error, OCS took seven years to concede that the Jacobs were entitled to the notice the legislature mandated in 2001. The superior court did not articulate this rationale for relying on factor (F), but we believe it is clear that the record supports reliance on this factor.[41]

Because we hold that the superior court did not abuse its discretion in awarding enhanced fees, we affirm its alternative award of fifty percent of the Jacobs' attorney's fees.

## V. CONCLUSION

For the reasons explained above, we AFFIRM the superior court's finding that the Jacobs were the prevailing parties, VACATE the portion of its order granting full fees

---

**38.** *See Ware v. Ware*, 161 P.3d 1188, 1199 (Alaska 2007) ("The superior court's award will not be reversed unless we find that there has been a clear abuse of discretion, and the court's determination is manifestly unreasonable.")

**39.** *See Reid v. Williams*, 964 P.2d 453, 463 (Alaska 1998) (noting that Rule 82 "provides protection for the winning litigant who is forced to respond to an opponent's excessive efforts or bad faith litigation tactics" and citing factors (F) and (G) ); *see also Cole*, 4 P.3d at 960 (holding that the superior court did not abuse its discretion by enhancing Rule 82 fees in part on the finding that the claims and defenses of the party made to pay the fees "were not reasonable" and the record supported that finding).

**40.** *See Jacob v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 177 P.3d 1181, 1183 (Alaska 2008).

**41.** We rely here on "the settled rule that a trial court's actions may be affirmed when an alternative ground, not necessarily relied upon by the trial court, appears in the record." *N. Lights Motel, Inc. v. Sweaney*, 563 P.2d 256, 257 (Alaska 1977) (citing *Fireman's Fund Am. Ins. Cos. v. Gomes*, 544 P.2d 1013, 1017 n. 12 (Alaska 1976); *Ransom v. Haner*, 362 P.2d 282, 285 (Alaska 1961)).

under AS 09.60.010(c), and AFFIRM the award of enhanced Rule 82 fees.