*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA and MUNICIPALITY OF ANCHORAGE, | ) ) ) | Supreme Court No. S-14521 |
| Appellants, | ) ) | Superior Court No. 3AN-10-09519 CI |
| v. | ) ) | O P I N I O N |
| JULIE A. SCHMIDT, GAYLE SCHUH, JULIE M. VOLLICK, SUSAN L. BERNARD, FRED W. TRABER, and LAURENCE SNIDER, | ) ) ) ) ) ) | No. 6898 – April 25, 2014 |
| Appellees. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Kevin M. Saxby and Lance B. Nelson, Senior Assistant Attorneys General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellant State of Alaska. Pamela D. Weiss, Assistant Municipal Attorney, and Dennis A. Wheeler, Municipal Attorney, Anchorage, for Appellant Municipality of Anchorage. David Oesting and Roger Leishman, Davis Wright Tremaine LLP, Anchorage, and Thomas Stenson and Leslie Cooper, ACLU of Alaska Foundation, Anchorage, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, and Maassen,

Justices, and Eastaugh, Senior Justice.[*] [Carpeneti, Justice,
not participating.]

EASTAUGH, Senior Justice.
WINFREE, Justice, concurring.

## I.     INTRODUCTION

The State of Alaska and the Municipality of Anchorage exempt from municipal property taxation $150,000 of the assessed value of the residence of an owner who is a senior citizen or disabled veteran. But the full value of the exemption is potentially unavailable if a person who is not the owner's spouse also occupies the residence. Contending that the exemption program violates their rights to equal protection and equal opportunities, three Anchorage same-sex couples in committed, long-term, intimate relationships sued the State and the Municipality. The superior court ruled for all three couples. The State and Municipality appeal.

As to two of the couples, we affirm. Same-sex couples, who may not marry or have their marriages recognized in Alaska, cannot benefit or become eligible to benefit from the exemption program to the same extent as heterosexual couples, who are married or may marry. The exemption program therefore potentially treats same-sex couples less favorably than it treats opposite-sex couples even though the two classes are similarly situated. The identified governmental interests do not satisfy even minimum scrutiny. The exemption program therefore violates the two couples' equal protection rights as guaranteed by article I, section 1 of the Alaska Constitution.

As to the third couple, we reverse the ruling in their favor because we conclude that the program does not exempt a residence from taxation unless the senior

---

[*]     Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

citizen or veteran has some ownership interest in it. If the senior citizen or veteran has no actual ownership interest, the program treats a same-sex couple the same as a heterosexual couple by denying the exemption to both couples, rendering marital status and the ability to marry irrelevant. Because the senior citizen member of the third couple had no ownership interest in the residence, that couple had no viable equal protection claim.

We also vacate and remand the award of attorney's fees.

## II.    FACTS AND PROCEEDINGS

### A.    The Tax Exemption Program

By statute, specified classes of Alaska municipalities may levy property taxes.[1] Also by statute, particular classes of property are exempt or partially exempt from municipal taxation.[2] The exemption pertinent here is for real property owned and occupied as the primary residence by a municipal resident who is either (a) 65 years of age or older or (b) a disabled veteran.[3] The exemption's implementing regulations are entitled "Senior Citizen and Disabled Veteran Property Tax Exemption."[4] For convenience, we will sometimes refer to the exemption as the "senior citizen and disabled veteran exemption" and to eligible applicants as "senior citizens" and "disabled veterans." Likewise, we will sometimes refer to the exemption statute and the implementing regulations collectively as the "exemption program."

The statute authorizing this exemption has existed since 1972, when the

---

[1]     AS 29.45.010.

[2]     *E.g.*, AS 29.45.030(a), (e), (j), (*l*).

[3]     AS 29.45.030(e).

[4]     The tax exemption's implementing regulations are set out in Alaska Administrative Code (AAC) Title 3, Chapter 135 (2012).

legislature adopted a property tax exemption for senior citizens.[5] In 1984 the legislature extended the exemption to disabled veterans.[6] The subsection providing the senior citizen and disabled veteran exemption was recodified as AS 29.45.030(e) in 1985.[7]

The pertinent parts of the exemption statute partially exempt a home's assessed value from municipal property taxation. The applicable subsection is AS 29.45.030(e). It provides in relevant part:

> The real property owned and occupied as the primary residence and permanent place of abode by a resident who is (1) 65 years of age or older; (2) a disabled veteran; or (3) at least 60 years of age and the widow or widower of a person who qualified for an exemption under (1) or (2) of this subsection is exempt from taxation on the first $150,000 of the assessed value of the real property. . . . Only one exemption may be granted for the same property, and, if two or more persons are eligible for an exemption for the same property, the parties shall decide between or among themselves who is to receive the benefit of the exemption. Real property may not be exempted under this subsection if the assessor determines, after notice and hearing to the parties, that the property was conveyed to the applicant primarily for the purpose of obtaining the exemption.

In sum, the statute exempts $150,000 of the assessed value of a home owned and occupied as the primary residence by a senior citizen (a person 65 or older)[8] or a disabled

---

[5]    Ch. 118, § 2, SLA 1972; *see also* former AS 29.53.020(e) (1972).

[6]    Ch. 40, §§ 1–4, SLA 1984; *see also* former AS 29.53.020(e) (1984).

[7]    Ch. 74, § 12, SLA 1985.

[8]    3 AAC 135.120(8).

veteran.[9] Alaska Statute 29.45.030(g) requires the State, if appropriations are sufficient, to reimburse municipalities for tax revenues lost by operation of the exemption statute.

The pertinent implementing regulation — 3 AAC 135.085 — provides in relevant part:

> (a) When an eligible person and his or her spouse occupy the same permanent place of abode, the reimbursement described in AS 29.45.030(g) applies, regardless of whether the property is held in the name of the husband, wife, or both.
>
> . . . .
>
> (c) If property is occupied by a person other than the eligible applicant and his or her spouse, an exemption, to be eligible for reimbursement, applies only to the portion of the property permanently occupied by the eligible applicant and his or her spouse as a place of abode.[10]

Two aspects of the regulation's subsections are significant here: (1) So long as the eligible applicant and the applicant's spouse occupy the residence, reimbursement is available regardless of which spouse holds title; and (2) if a person other than the eligible applicant and the applicant's spouse occupies the residence, reimbursement is available only with respect to the portion occupied by the eligible applicant and his or her spouse.

The regulation's text ostensibly only addresses the extent of the State's obligation to reimburse a municipality for lost tax revenues. But its title — "Eligibility" — could be read to imply that it addresses exemption eligibility, and the parties have litigated this dispute as though the regulation defines exemption eligibility. Moreover, the Municipality seems to believe that it must interpret eligibility in accordance with the regulation. No words in the statute or regulation explicitly deny an exemption for that

---

[9]    AS 29.45.030(i)(1) defines "disabled veteran."

[10]    3 AAC 135.085(a), (c).

portion of the property occupied by a person other than the eligible applicant or the eligible applicant's spouse. But the parties read the regulation to contain such a denial. They therefore interpret the program as denying the exemption for that portion of the property occupied by a person other than the spouse of an eligible applicant. For purposes of this appeal, we assume their interpretation is correct.

As a result of this interpretation, if the assessed value of the residence is less than $300,000 and the ineligible partner occupies half the property, the full value of the exemption will not be granted to the unmarried couple.[11]

The exemption program applies to residences owned and occupied by senior citizens or disabled veterans in the Municipality of Anchorage.[12] The Municipality administers the exemption program in accordance with the statute and the regulations.

## B.     The Plaintiff Couples

Six plaintiffs who comprised three same-sex couples brought this lawsuit, alleging that the members of each couple "live together in long-term, committed, interdependent, intimate relationships ('domestic partners'), with the intention of remaining in such relationships for life."[13] All resided in Anchorage.

---

[11]     If the assessed value is $300,000 or more, the full value of the $150,000 exemption applies regardless of the couple's marital status — even if the ineligible partner occupies half of the property. Co-occupancy does not limit the full value of the exemption in that situation.

[12]     Anchorage Municipal Code (AMC) 12.15.015(D)(1)–(2) (2012).

[13]     One couple married in Canada in 2007; another married in California in 2008. The Municipality has not disputed the nature of the couples' relationships or the facts surrounding their exemption applications, and the State conceded that all three couples are in committed, same-sex relationships.

(continued...)

The first couple — Julie Schmidt and Gayle Schuh — co-owned their Anchorage home as tenants in common. Each had a 50% ownership interest in the home. In 2010, the year they filed suit, their home's assessed value was $254,200. Schmidt was then 67 years old and Schuh was 62. Because Schmidt was 65 or older, she was eligible to apply for the tax exemption. Because Schuh was under 65, she was not eligible to apply. Schmidt had applied for the exemption in 2008. The application form required Schmidt to list the percentage of the home that she owned and the percentage that she occupied. She indicated that she owned and occupied 50% of the property. An affidavit prepared by State Assessor Steve Van Sant discussing the effect of marriage on the senior citizen exemption for 2010 stated that because Schmidt had only a 50% ownership interest in the home, only 50% of the home's assessed value was exempt. Van Sant calculated that if Schmidt and Schuh had been married, their property tax in 2010 would have been "roughly $359.31 less." In effect, because Schuh and Schmidt were not married, they could not achieve the tax exemption's maximum benefit.[14]

The second couple — Julie Vollick and Susan Bernard — co-owned their Anchorage home as tenants in common from 2004 until 2010. Each had a 50% ownership interest in the home. In 2010 their home's assessed value was $232,600. Vollick had served in the United States Air Force for 20 years and was injured in the line

_____

[13]    (...continued)
We use "same-sex couple" or "same-sex domestic couple" to mean two people of the same biological sex who are in a long-term, committed, intimate domestic partnership, and who would marry if they could. The three couples in this case met this definition. See *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 784 n.5 (Alaska 2005); *see also* AS 39.50.200(a)(4) (" '[D]omestic partner' means a person who is cohabiting with another person in a relationship that is like a marriage but that is not a legal marriage . . . .").

[14]    *See* AS 29.45.030(e); *see also* 3 AAC 135.085(a), (c).

of duty. She qualified as a "disabled veteran" under AS 29.45.030(i)(1), making her eligible for the tax exemption. Bernard did not qualify as a disabled veteran or senior citizen. Vollick applied for the disabled veteran exemption in 2008. Her application indicated that she owned and occupied 50% of the property. State Assessor Van Sant stated in his affidavit that Vollick's 50% ownership limited the disabled veteran exemption available for the home. He explained that if Vollick and Bernard had been married, they could have obtained a disabled veteran exemption based on 100% of the assessed value, and they would have owed "roughly $528.76 less" in property taxes in 2010.[15]

The third couple — Fred Traber and Laurence Snider — did not formally co-own their Anchorage home; according to their complaint, the home was "held in Traber's name." The complaint also alleged that "both partners view the home as belonging to both of them." In 2010 the home's assessed value exceeded $150,000. In 2010 Snider was 69 years old, but although he was a senior citizen, the State contended that he could not then apply for the exemption because he did not own the condominium. Traber was then 62 and therefore did not qualify as a senior citizen. The record does not reflect whether Traber or Snider ever applied for the senior citizen exemption.[16]

## C.    The Lawsuit

The couples sued the State of Alaska and the Municipality of Anchorage, alleging that the tax exemption program is unconstitutional. They claimed that the program discriminates against them based on sexual orientation because they are barred from marrying or having their marriages recognized in Alaska.

___

[15]    Vollick and Bernard separated in 2011, but no party argues that their separation moots their claims.

[16]    No party argues that the absence of an exemption application for that residence is significant.

The couples requested a judgment declaring that the tax exemption program violates the Alaska equal protection clause; they also requested an injunction requiring the State and Municipality to apply the exemption program on terms identical to those that would apply if the couples were in recognized marriages.

The State argued that the superior court should not reach the merits of the couples' equal protection claim because: (1) the Alaska Constitution's Marriage Amendment, article I, section 25, precludes the claim; (2) the couples are not situated similarly with married couples; and (3) the tax exemption program is not facially discriminatory. The Municipality argued that because state law dictates the terms of the exemption, the State was in the best position to address the couples' arguments. The Municipality did not otherwise address the merits of the couples' claims.

Superior Court Judge Frank A. Pfiffner granted summary judgment for all six plaintiffs. Applying minimum scrutiny, the court held that the tax exemption program violated the Alaska Constitution's equal protection clause. The court did not reach the couples' alternative arguments regarding heightened scrutiny. The court declared that the program violated article I, section 1 of the Alaska Constitution "by imposing a spousal limitation that facially discriminates against same-sex domestic partners." It permanently enjoined the State and Municipality from administering the program in a manner that treated same-sex domestic partners differently from married, opposite-sex couples. And it awarded the couples 100% of their attorney's fees. The State and Municipality appeal. The State's appeal primarily focuses on the merits of the summary judgment; the Municipality's appeal exclusively challenges the attorney's fees award.

## III.  STANDARD OF REVIEW

"We review a grant or denial of summary judgment de novo."[17]  Courts grant summary judgment when no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law.[18]

"Whether two entities are similarly situated is generally a question of fact,"[19] reviewed for clear error.[20] Identifying the applicable level of scrutiny in an equal protection case is a question of law.[21]  "Likewise, identifying the nature of the challenger's interest and assessing the importance of the governmental interest and the fit between that interest and the means chosen to advance it, present questions of law."[22] We apply our independent judgment to questions of law, and we adopt the rule of law

---

[17]  *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 785 (Alaska 2005) (citing *City of Kodiak v. Samaniego*, 83 P.3d 1077, 1082 (Alaska 2004); *Powell v. Tanner*, 59 P.3d 246, 248 (Alaska 2002)) (reviewing de novo grant and denial of summary judgment).

[18]  *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 757 (Alaska 2008) (citing *Miller v. Safeway, Inc.*, 170 P.3d 655, 658 (Alaska 2007)) (discussing standard for grant of summary judgment).

[19]  *Alaska Inter-Tribal Council v. State*, 110 P.3d 947, 967 (Alaska 2005) (citing *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001)) (reviewing for clear error finding that two classes were not similarly situated).

[20]  *See id.* at 956 (citing *Vezey v. Green*, 35 P.3d 14, 19-20 (Alaska 2001)).

[21]  *Alaska Civil Liberties Union*, 122 P.3d at 785 (citing *Reichmann v. State, Dep't of Natural Res.*, 917 P.2d 1197, 1200 & n.6 (Alaska 1996); *Sonneman v. Knight*, 790 P.2d 702, 704 (Alaska 1990)) (determining de novo the applicable level of scrutiny).

[22]  *Id.* (citing *Sonneman*, 790 P.2d at 704–06) (conducting de novo equal protection analysis).

"most persuasive in light of precedent, reason, and policy."[23] "We apply our independent judgment when interpreting constitutional provisions or statutes."[24] "A constitutional challenge to a statute must overcome a presumption of constitutionality."[25]

"Whether there are sufficient findings for informed appellate review is a question of law."[26] We apply our independent judgment to resolve questions of law,[27] and therefore exercise our independent judgment in considering whether a court has provided sufficient factual findings or legal explanation to permit meaningful appellate review. We apply that standard in deciding whether sufficient factual findings or legal explanations support the superior court's attorney's fees award. "We review the alleged inadequacy of a trial court's fact findings to determine whether they give [us] a clear indication of the factors considered important by the trial court or allow us to determine from the record what considerations were involved."[28] We also apply the independent

---

[23] *State v. Anthony*, 810 P.2d 155, 156–57 (Alaska 1991) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979)) (internal quotation marks omitted) (citing *Sonneman*, 790 P.2d at 704) (describing independent judgment standard) *reh'g granted*, 816 P.2d 1377 (Alaska 1991).

[24] *Alaska Civil Liberties Union*, 122 P.3d at 785 (citing *Alaska Trademark Shellfish, LLC v. State*, 91 P.3d 953, 956 (Alaska 2004); *State, Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 858 (Alaska 2003)) (applying independent judgment to constitutional and statutory questions).

[25] *Id.* at 785 (citing *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 275 (Alaska 2001)); *see also Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 192 (Alaska 2007) (discussing the presumption of constitutionality).

[26] *Hooper v. Hooper*, 188 P.3d 681, 692 (Alaska 2008).

[27] *Id.* at 685.

[28] *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 137 (Alaska 1997) (as quoted in *Hooper*, 188 P.3d at 692).

judgment standard of review in considering whether the trial court applied the law correctly in awarding attorney's fees under AS 09.60.010(c).[29]  We "exercise our independent judgment in reviewing whether a trial court has applied the appropriate legal standard in making its prevailing party determination."[30]

When a judgment is reversed in part and affirmed in part, we exercise our independent judgment in deciding whether any part of an attorney's fees award must be vacated and reconsidered on remand.[31]

## IV.	DISCUSSION

### A.	The Marriage Amendment Does Not Bar The Couples' Claims.

We must first address the State's argument that the Marriage Amendment altogether forecloses these couples' equal protection claims.

Article I, section 1 of the Alaska Constitution provides in part: "This constitution is dedicated to the principles that . . . all persons are equal and entitled to equal rights, opportunities, and protection under the law . . . ."[32]  This passage is often

---

[29]	*State v. Jacob*, 214 P.3d 353, 358 (Alaska 2009).

[30]	*Id.*

[31]	*Cf. Kenai Peninsula Borough v. Port Graham Corp.*, 871 P.2d 1135, 1142 (Alaska 1994) (vacating and remanding attorney's fees award for recalculation after reversing in part and affirming in part the superior court judgment, despite our agreement with the superior court's legal conclusions concerning the nature and scope of the award authorized by the applicable statute).

[32]	Article I, section 1 states in full:

This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all

(continued...)

referred to as the equal protection clause.[33]

In 1998 Alaska voters amended the Alaska Constitution by adopting the Marriage Amendment, which became article I, section 25 of the constitution.[34] Its full text provides: "To be valid or recognized in this State, a marriage may exist only between one man and one woman."[35] The Marriage Amendment effectively precludes same-sex couples from marrying in Alaska or having their out-of-state marriages recognized in Alaska.

Constitutional provisions that potentially conflict must be harmonized if possible.[36] We have recognized that "[t]he state equal protection clause cannot override more specific provisions in the Alaska Constitution."[37] The State contends that the Marriage Amendment precludes the couples' equal protection claims because it permits the State to treat married couples differently from unmarried couples, and because Alaska's equal protection clause cannot "override" the Marriage Amendment's "more

---

[32]    (...continued)
persons have corresponding obligations to the people and to the State.

[33]    *See, e.g.*, *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 785 (Alaska 2005).

[34]    S.J. Res. 42, 20th Leg., 2d Sess. (Alaska 1998).

[35]    Alaska Const. art. I, § 25.

[36]    *Alaska Civil Liberties Union*, 122 P.3d at 786 (quoting CHESTER JAMES ANTIEAU, CONSTITUTIONAL CONSTRUCTION § 2.15, at 27 (1982)) (citing *Owsichek v. State, Guide Licensing & Control Bd.*, 763 P.2d 488, 496 (Alaska 1988); *State v. Ostrosky*, 667 P.2d 1184, 1191 (Alaska 1983); *Park v. State*, 528 P.2d 785, 786–87 (Alaska 1974); ANTIEAU, *supra*, § 2.06, at 18–20).

[37]    *Id.* at 787 (citing *Bess v. Ulmer*, 985 P.2d 979, 988 n.57 (Alaska 1999); ANTIEAU, *supra* note 36, § 2.16, at 27–28).

specific provision."

Before turning to the Marriage Amendment, we briefly address the State's invocation of AS 25.05.013(b), which provides that "[a] same-sex relationship may not be recognized by the state as being entitled to the benefits of marriage."[38] The State does not argue that AS 25.05.013(b) controls the outcome of this case. It instead asserts that the statute "strongly supports the idea that, as a matter of law, married couples are not similarly situated to unmarried couples, including those of the same sex." The State notes that AS 25.05.013(b) was not invalidated by *Alaska Civil Liberties Union v. State* ("*ACLU*")[39] and is therefore presumptively constitutional.[40]

Even assuming, as the State argues, that the statute demonstrates that married couples are not situated similarly to unmarried couples, the statute draws a

---

[38]     AS 25.05.013, entitled "Same-sex marriages," states in full:

> (a) A marriage entered into by persons of the same sex, either under common law or under statute, that is recognized by another state or foreign jurisdiction is void in this state, and contractual rights granted by virtue of the marriage, including its termination, are unenforceable in this state.

> (b) A same-sex relationship may not be recognized by the state as being entitled to the benefits of marriage.

[39]     122 P.3d at 781-95.

[40]     The couples do not argue that AS 25.05.013(b) is unconstitutional, and the superior court did not consider its constitutionality. The plaintiffs in *Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 360 (Alaska 2001), challenged its constitutionality, but because we held that their claim was not ripe for adjudication, we did not consider the statute's constitutionality. *Id*. Its constitutionality was not raised in *ACLU*.

distinction that is legally irrelevant to deciding whether the Marriage Amendment precludes the couples' equal protection claims. As we will see, that issue turns on whether the Marriage Amendment is more specific than the equal protection clause, and does not turn on whether married couples and unmarried couples are differently situated. And even as to the merits of the equal protection claim, the State's asserted distinction is irrelevant, because the correct classes for comparison are same-sex couples who wish to marry and opposite-sex couples who wish to marry, not married couples and unmarried couples.

The State implies that the comments of the sponsor of the bill that resulted in AS 25.05.013(b) are germane to the meaning of the Marriage Amendment. We are unconvinced that the history of the 1996 statute has any bearing on the meaning of the 1998 amendment to the constitution, especially considering the brevity and limited scope of the Marriage Amendment's text. Although AS 25.05.013(b) expressly prohibits same-sex couples from being entitled to the benefits of marriage, the legislature did not include a prohibition on benefits in the text of the resolution proposing the Marriage Amendment.[41] The State has directed us to no legislative history suggesting that the words of the Marriage Amendment should be interpreted as denying benefits to same-sex couples.[42] Moreover, the ballot measure that submitted the proposed amendment to the

---

[41]     AS 25.05.013 was enacted in 1996. Ch. 21, § 2, SLA 1996. The legislature in 1998 adopted the resolution that proposed the Marriage Amendment. Voters approved the Marriage Amendment in 1998. S.J. Res. 42, 20th Leg., 2d Sess. (Alaska 1998).

[42]     As we observed in *ACLU*, a state constitutional amendment that expressly denied benefits to same-sex couples would arguably offend the federal Constitution. 122 P.3d at 786 n.20 (citing *Romer v. Evans*, 517 U.S. 620 (1996) (holding that an amendment to the Colorado Constitution that repealed all local and statewide laws prohibiting sexual-orientation discrimination violated the federal equal protection clause)).

voters said nothing about denying or limiting benefits.[43] It did not refer to, quote, or paraphrase AS 25.05.013(b).

We now return to the effect of the Marriage Amendment here. In *ACLU*, same-sex partners challenged a public-employee benefits program.[44] An employee's spouse was eligible to receive benefits under the program, but an employee's same-sex domestic partner was not.[45] We ultimately held that the program violated the challengers' equal protection rights.[46] But before reaching the merits of the couples' claims in that case, we first rejected the Municipality of Anchorage's contention that the Marriage Amendment precluded the challengers' equal protection claims.[47] Our holding rejecting that contention would seem to dispose of the State's contention here that the Marriage Amendment precludes the couples' equal protection claims.

But in contending that the Marriage Amendment precludes the equal protection claims of same-sex couples, the State attempts to distinguish *ACLU* in two ways. First, it argues that *ACLU* was limited to employment benefits. Second, it argues that *ACLU* involved the right, recognized in article I, section 1 of the Alaska Constitution, to obtain the rewards of one's own industry, whereas here "there is no corresponding constitutional guaranty of a right to tax exemptions."

---

[43] The published statement supporting adoption of the ballot measure instead stated that the measure "does not 'target' anybody or 'deny' anybody their rights." *Loren Leman, Statement in Support*, in ALASKA 1998 OFFICIAL ELECTION PAMPHLET-BALLOT MEASURE 2 (1998), *available at* http://www.elections.alaska.gov/pub_oep.php.

[44] *Alaska Civil Liberties Union*, 122 P.3d at 783.

[45] *Id*.

[46] *Id*. at 795.

[47] *Id*. at 785−87. The State did not argue in *ACLU* that the Marriage Amendment foreclosed the ACLU plaintiffs' equal protection claims.

These two arguments fail to explain why *ACLU*'s holding regarding the Marriage Amendment does not dispose of the State's contention that the Marriage Amendment controls here. *ACLU* involved claims based on the denial of benefits to public employees,[48] and those claims indeed implicated rights potentially protected by the constitution.[49] But those circumstances had no bearing on our holding in *ACLU* that the Marriage Amendment did not preclude the plaintiffs' equal protection claims. The core issue regarding the effect of the Marriage Amendment was whether it conflicted with the equal protection clause, and if so, whether it controlled as the more specific provision.[50] As to that core issue, we concluded that the two constitutional provisions did not conflict, and that the Marriage Amendment did not preclude the plaintiffs' equal protection claims.[51] That conclusion did not turn on the circumstance that the plaintiffs' claims implicated a specific right to receive the rewards of one's industry (a right we did not even discuss in holding that the Marriage Amendment did not control).[52] Instead, we reached that conclusion because the Marriage Amendment did not explicitly permit the public employers to engage in practices that potentially violated the equal protection clause.[53] Because the Marriage Amendment did not address the benefits there at issue,

---

[48]     *Id*. at 786, 794.

[49]     *Id*. at 794 & n.60 (describing Alaska Constitution article I, section 1 and article XII, section 6 as guaranteeing "all Alaskans 'the rewards of their own industry' " and requiring merit public employment).

[50]     *Id*. at 786-87.

[51]     *Id*.

[52]     *Id*. at 785-87.  We instead discussed that right when we reached the conclusion of our equal protection analysis.  *Id*. at 794 & n.60.

[53]     *Id*. at 786-87.

-17-                                                                          6898

we held that it did not foreclose the plaintiffs' equal protection claims. That holding was not limited to equal protection claims of public employees, even though that happened to be the context in which the dispute arose.

We conclude that what we said and held in *ACLU* regarding the Marriage Amendment controls here:

> The Marriage Amendment effectively precludes same-sex couples from marrying in Alaska, but it does not explicitly or implicitly prohibit public employers from offering to their employees' same-sex domestic partners all benefits that they offer to their employees' spouses. It does not address the topic of employment benefits at all.
>
> Nor have we been referred to any legislative history implying that, despite its clear words, the Marriage Amendment should be interpreted to deny employment benefits to public employees with same-sex domestic partners. The Marriage Amendment could have the effect of foreclosing the present challenge only if it could be read to prohibit public employers from offering benefits to their employees' same-sex domestic partners. But nothing in its text would permit that reading . . . .[54]

Similarly, the Marriage Amendment does not explicitly or implicitly prohibit the State from offering the same property tax exemption to an eligible applicant who has a same-sex domestic partner that the State offers to an eligible applicant who has a spouse. Nor does the Marriage Amendment explicitly or implicitly permit the State to deny benefits to same-sex couples who demonstrate that they are similarly situated to married couples who receive those benefits.

The couples' arguments here are like those of the *ACLU* plaintiffs.[55] The

---

[54]     *Id.* at 786 (footnotes omitted).

[55]     *See id.* at 787.

couples here do not argue that the Marriage Amendment violates Alaska's equal protection clause or that they have the right to marry. As Judge Pfiffner correctly reasoned in quoting from *ACLU*, "the Marriage Amendment speaks only to the *definition* of marriage," not to the *benefits* of marriage.[56] The superior court also correctly relied on *ACLU*'s recognition that even though the Marriage Amendment "effectively prevents same-sex couples from marrying," it "does not automatically permit the government to treat them differently in other ways."[57]

The Marriage Amendment does not bar the couples' equal protection claims here.[58]

### B. The Tax Exemption Program Facially Discriminates Between Same-Sex Couples And Opposite-Sex Couples.

A plaintiff alleging an equal protection violation must show either that facially neutral state action has a discriminatory purpose[59] or that the state action is facially discriminatory.[60] When a "law by its own terms classifies persons for different

---

[56]     *Id.* at 786-87 (superior court's emphasis).

[57]     *Id*.

[58]     The State does not expressly challenge the couples' standing to sue, but asserts that the terms "widow" and "widower" found in AS 29.45.030(e) are not relevant here. If that assertion were meant to imply an objection to the couples' standing, it would ignore the words of the pertinent regulation. It is undisputed that none of the plaintiffs here is, or can become, a "spouse," "husband," or "wife" of his or her partner. *See* 3 AAC 135.085(a), (c).

[59]     *See Alaska Inter-Tribal Council v. State*, 110 P.3d 947, 956 (Alaska 2005) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273–74 (1979); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977); *Washington v. Davis*, 426 U.S. 229, 239–42 (1976)).

[60]     *Alaska Civil Liberties Union*, 122 P.3d at 788.

treatment," the law is facially discriminatory.[61]

The words of the tax exemption statute and regulations create a classification between married couples and unmarried couples.[62] Because same-sex partners cannot become a married couple,[63] the exemption program's classification grants benefits to a class of persons who have the legal status of husband, wife, or spouse that it denies to the class of persons who cannot achieve that status. Reading the Marriage Amendment together with the exemption statute and related regulation,[64] two conclusions are unavoidable: (1) Same-sex couples cannot marry or have their marriages recognized in Alaska,[65] and (2) because they cannot marry, same-sex couples cannot obtain the benefits of the tax exemption to the same extent as married couples.[66]

Judge Pfiffner correctly observed that "[i]n Alaska, a marital classification facially discriminates based on an individual's sexual orientation." He reasoned with regard to this case that because the exemption program expressly refers to "widow," "widower," "spouse," "husband," and "wife," it facially discriminates based on sexual orientation. Judge Pfiffner's reasoning tracks our analysis in *ACLU*, where we explained:

---

[61]    *Id.* (quoting JOHN E. NOWAK & RONALD D. ROTUNDA, CONSTITUTIONAL LAW § 14.4, at 711 (7th ed. 2004)).

[62]    *See* AS 29.45.030(e) (benefitting a "widow" or "widower"); *see also* 3 AAC 135.085(a), (c) (benefitting a "spouse," "husband," or "wife").

[63]    Alaska Const. art. I, § 25.

[64]    We read related provisions together, not in isolation. *See Underwater Constr., Inc. v. Shirley*, 884 P.2d 150, 155 (Alaska 1994).

[65]    Alaska Const. art. I, § 25.

[66]    *See* AS 29.45.030(e); *see also* 3 AAC 135.085.

By restricting the availability of benefits to "spouses," the benefits programs "by [their] own terms classif[y]" same-sex couples "for different treatment." Heterosexual couples in legal relationships have the opportunity to marry and become eligible for benefits. In comparison, because of the legal definition of "marriage," the partner of a homosexual employee can never be legally considered as that employee's "spouse" and, hence, can never become eligible for benefits. We therefore conclude that the benefits programs are facially discriminatory.[67]

The State argues that the difference in treatment is based not on marital status, but on long-standing distinctions between types of property interests (tenancy in common rather than tenancy by the entirety); it also argues that the exemption laws are "facially neutral." Additionally, the State asserts (somewhat inconsistently) that the exemption program permissibly distinguishes between married and unmarried couples.

The State's contentions are problematic for two reasons.

First, as the exemption program pertains to this lawsuit, marital status is the only distinction the exemption statute and regulation draw; they contain no distinction, explicit or implicit, based on differences in property interests. In fact, by extending the exemption to married couples regardless of whether the residence "is held in the name of the husband, wife, or both,"[68] the regulation makes the type of property interest irrelevant.

Second, even if the exemption's full value were conferred only on couples

---

[67] *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 789 (Alaska 2005) (alterations in original) (footnotes omitted). In *ACLU*, we recognized that the benefits programs became discriminatory only after the adoption of the Marriage Amendment in 1998. *Id.* at 789 n.38. But we explained that "allowing a discriminatory classification to remain in force is no different than giving it the force of law in the first place." *Id.* The same analysis applies here.

[68] 3 AAC 135.085(a).

with a type of property interest — tenancy by the entirety — that is exclusively available to married couples, the program would facially discriminate against same-sex couples who could never acquire that type of interest.[69] Because one type of property interest is categorically unavailable to a class of persons, distinctions based on that type of property ownership would create a facial classification.

We therefore conclude that the tax exemption program facially discriminates between same-sex couples and opposite-sex couples.

C. **Committed Same-Sex Couples Who Want To Marry Are Similarly Situated to Opposite-Sex Couples Who Want To Marry.**

Plaintiffs who assert equal protection violations "must demonstrate that the

---

[69] Per AS 34.15.110(b), married couples in Alaska who acquire real property co-own the property as tenants by the entirety unless the conveyance or devise specifies otherwise or unless they create a community trust under AS 35.77.100. Tenancy by the entirety is "[a] common-law estate in which each spouse [owns] the whole of the property. An estate by the entirety is based on the legal fiction that a husband and wife are a single unit." BLACK'S LAW DICTIONARY 627 (9th ed. 2009); *see Faulk v. Estate of Haskins*, 714 P.2d 354, 356 (Alaska 1986) (holding that husband and wife's failure to recite marital status in the deed did not defeat tenancy by the entirety); *see also Smith v. Kofstad*, 206 P.3d 441, 445 (Alaska 2009) (discussing survivorship for tenants by the entirety). Per AS 34.15.140(c), a spouse who owns real property may convey it to "self and the other spouse" as tenants by the entirety or as tenants in common.

In contrast, unmarried persons (including domestic partners) in Alaska who acquire real property together hold it as tenants in common. By law, they cannot establish a tenancy by the entirety. AS 34.15.130 (abolishing joint tenancies except interests in personalty and tenancy by the entirety); *see also* AS 34.15.110(a). Tenancy in common is "[a] tenancy by two or more persons, in equal or unequal undivided shares, each person having an equal right to possess the whole property but no right of survivorship." BLACK'S LAW DICTIONARY 1604 (9th ed. 2009); *see Voss v. Brooks*, 907 P.2d 465, 468 n.2 (Alaska 1995) (noting that unmarried couples could not hold property as tenants by the entirety). "Tenants in common are presumed to take equal undivided interests, but this presumption is rebuttable." *Voss*, 907 P.2d at 469 (citing *D.M. v. D.A.*, 885 P.2d 94 (Alaska 1994)).

challenged law treats similarly situated persons differently."[70] Such claims require us to decide which classes are to be compared and determine whether those classes are similarly situated or whether differences between the classes justify different treatment.[71]

The State argues that the classes for comparison should be unmarried co-owners and married co-owners. Judge Pfiffner rejected that argument and compared the plaintiff couples (who are same-sex couples in marriage-like relationships) to married couples.

We decided above that the tax exemption program draws a facial classification between same-sex couples and opposite-sex couples.[72] Although the superior court defined the classes somewhat differently — it compared same-sex couples and married couples — this definitional difference is inconsequential. Because opposite-sex couples can marry and have their marriages recognized in Alaska, for purposes of this appeal, there is essentially no difference between married couples and opposite-sex couples who want to marry.

We must next determine whether same-sex and opposite-sex couples are similarly situated with respect to the benefits at issue. The superior court found that married couples and same-sex domestic partners are similarly situated because they make

---

[70]     *Alaska Civil Liberties Union*, 122 P.3d at 787 (citing *Alaska Inter-Tribal Council v. State*, 110 P.3d 947, 966 (Alaska 2005); *Lawson v. Helmer*, 77 P.3d 724, 728 (Alaska 2003)).

[71]     *Alaska Inter-Tribal Council*, 110 P.3d at 967 ("If it is clear that two classes are not similarly situated, this conclusion 'necessarily implies that the different legal treatment of the two classes is justified by the differences between the two classes.' " (quoting *Lauth v. State*, 12 P.3d 181, 187 (Alaska 2000))) (citations omitted).

[72]     *Cf. Alaska Civil Liberties Union*, 122 P.3d at 788 ("[T]he proper comparison is between same-sex couples and opposite-sex couples, whether or not they are married.").

similar long-term commitments to each other, including commitments to co-own their homes.

The State argues that committed same-sex couples are not similarly situated to married couples because only married couples own property as tenants by the entirety. This argument merely recites one potential aspect of marriage: a married couple's ability to own property as tenants by the entirety. But the State has not explained what it is about tenancy by the entirety that could justify denying same-sex couples equal access to the tax exemption. The only justification the State identifies is based on marital status, a difference that leads back to the constitutional issue. (To the extent the State's argument bears on the importance of governmental interests, we will discuss it when we apply the three-part analysis for equal protection claims in Alaska.)

Moreover, tenancy by the entirety could not be the basis for distinguishing between these classes. First, married couples do not necessarily co-own their residences as tenants by the entirety.[73] Second, the exemption program makes the form of title irrelevant.[74]

The couples argue that the couples in this case "have cared for and supported each other, built and shared homes together, and combined finances. Their relationships are like those of committed opposite-sex couples in every way except that they cannot marry under Alaska law." In *ACLU*, we considered similar arguments and noted:

---

[73]    The members of a married couple do not necessarily co-own their residence. One spouse might have owned the residence before the marriage, or might inherit it after the couple marries. And there are statutory exceptions to tenancy by the entirety for property acquired by a couple during their marriage: A conveyance or devise may expressly declare otherwise, or the married couple may create a community trust. AS 34.15.110(b); AS 34.77.100.

[74]    3 AAC 135.085(a).

> Many same-sex couples are no doubt just as truly closely relat[ed] and closely connected as any married couple, in the sense of providing the same level of love, commitment, and mutual economic and emotional support, as between married couples, and would choose to get married if they were not prohibited by law from doing so.[75]

For purposes of analyzing the effects of the exemption program, we hold that committed same-sex domestic partners who would enter into marriages recognized in Alaska if they could are similarly situated to those opposite-sex couples who, by marrying, have entered into domestic partnerships formally recognized in Alaska.

### D. The Tax Exemption Program Treats Same-Sex Domestic Couples And Opposite-Sex Couples Differently.

We must next determine whether the challenged program treats these similarly situated classes unequally.[76] The State maintains that the program treats all unmarried couples equally because no unmarried couples can obtain the full exemption to the same extent that married couples can. We rejected this argument in *ACLU*.[77] We there held that the law treats same-sex couples differently from opposite-sex couples if it prevents same-sex couples from becoming eligible for the benefits at issue.[78] We said there:

> The municipality correctly observes that no unmarried employees, whether they are members of same-sex or opposite-sex couples, can obtain the disputed benefits for

---

[75] *Alaska Civil Liberties Union*, 122 P.3d at 791 (alteration in original) (internal quotation marks omitted).

[76] *Id*. at 787 ("Article I, section 1 of the Alaska Constitution mandates equal treatment of those similarly situated . . . .") (internal quotation marks omitted).

[77] *Id*. at 788.

[78] *Id*.

their domestic partners. But this does not mean that these programs treat same-sex and opposite-sex couples the same. Unmarried public employees in opposite-sex domestic relationships have the opportunity to obtain these benefits, because employees are not prevented by law from marrying their opposite-sex domestic partners. In comparison, public employees in committed same-sex relationships are absolutely denied any opportunity to obtain these benefits, because these employees are barred by law from marrying their same-sex partners in Alaska or having any marriage performed elsewhere recognized in Alaska. Same-sex unmarried couples therefore have no way of obtaining these benefits, whereas opposite-sex unmarried couples may become eligible for them by marrying. The programs consequently treat same-sex couples differently from opposite-sex couples.[79]

This reasoning applies equally here. As we explained in *ACLU*, the Marriage Amendment dictates that only heterosexual couples can become "spouses."[80] Likewise, opposite-sex couples may marry and obtain the full benefit of the exemption, but same-sex couples may not. We affirm the superior court's finding that the exemption program treats similarly situated people unequally.

**E.    The Tax Exemption Program Violates The Equal Protection Rights Of Schmidt, Schuh, Vollick, and Bernard.**

Having decided that the tax exemption program is facially discriminatory and that it treats similarly situated people differently, we must apply the three-part sliding-scale approach to equal protection under the Alaska Constitution. Our equal protection clause "protects Alaskans' right to non-discriminatory treatment more

---

[79]    *Id*. (footnotes and citations omitted).

[80]    *Id*. at 788–89.

robustly than does the federal equal protection clause."[81]  "To implement Alaska's more-stringent equal protection standard, we have adopted a three-step, sliding-scale test that places a progressively greater or lesser burden on the state, depending on the importance of the individual right affected by the disputed classification and the nature of the governmental interest at stake . . . ."[82]  Our sliding-scale approach involves a familiar process:

> First, it must be determined at the outset what weight should be afforded the constitutional interest impaired by the challenged enactment.  The nature of this interest is the most important variable in fixing the appropriate level of review . . . .  Depending upon the primacy of the interest involved, the state will have a greater or lesser burden in justifying its legislation.
>
> Second, an examination must be undertaken of the purposes served by a challenged statute.  Depending on the level of review determined, the state may be required to show only that its objectives were legitimate, at the low end of the continuum, or, at the high end of the scale, that the legislation was motivated by a compelling state interest.
>
> Third, an evaluation of the state's interest in the particular means employed to further its goals must be undertaken.  Once again, the state's burden will differ in accordance with the determination of the level of scrutiny under the first stage of analysis.  At the low end of the sliding scale, we have held that a substantial relationship between means and ends is constitutionally adequate.  At the higher end of the scale, the fit between means and ends must be

---

[81]  *State, Dep't of Health & Soc. Servs. v. Planned Parenthood of Alaska, Inc.*, 28 P.3d 904, 909 (Alaska 2001) (citing *State v. Anthony*, 810 P.2d 155, 157 (Alaska 1991)).

[82]  *Alaska Civil Liberties Union*, 122 P.3d at 787 (quoting *Malabed v. N. Slope Borough*, 70 P.3d 416, 420–21 (Alaska 2003)) (internal quotation marks omitted).

much closer. If the purpose can be accomplished by a less restrictive alternative, the classification will be invalidated.[83]

### 1.    Minimum scrutiny resolves this case.

Government action that burdens only economic interests generally receives only minimum scrutiny.[84] Because the tax exemption program affects the couples' economic interests, it is subject to at least minimum scrutiny. Because minimum scrutiny resolves this case, we do not need to consider the couples' contention that we should apply heightened scrutiny.

### 2.    The governmental interests are legitimate, but the classification is not substantially related to those interests.

Under minimum scrutiny, the governmental interests advanced by the challenged law need only to be legitimate.[85] Minimum scrutiny requires only a "fair and substantial relation" between the means and the legitimate goals of the challenged law.[86]

The State argues that the marital classification advances governmental interests "in cost control, administrative efficiency, and promotion of marriage." Although we held in *ACLU* that these same interests failed to justify the marital classification,[87] the State contends that its interest in cost-control is greater here than it was in *ACLU* because tax exemptions must be narrowly construed to maintain the

---

[83]    *Alaska Civil Liberties Union*, 122 P.3d at 789 (citing *Matanuska-Susitna Borough Sch. Dist. v. State*, 931 P.2d 391, 396–97 (Alaska 1997)).

[84]    *Id*. at 790 (citing *Church v. State, Dep't of Revenue*, 973 P.2d 1125, 1130 (Alaska 1999)).

[85]    *Id*. at 790 (citing *Matanuska-Susitna Borough*, 931 P.2d at 396–97).

[86]    *Planned Parenthood of Alaska, Inc.*, 28 P.3d at 911 (quoting *Isakson v. Rickey*, 550 P.2d 359, 362 (Alaska 1976)).

[87]    *Alaska Civil Liberties Union*, 122 P.3d at 790–93.

broadest possible tax base and to equalize the tax burden. It also contends that its interest in administrative efficiency is greater here because there is a larger pool of persons — "all potentially eligible real property owners as opposed to identifiable public employees" — who would apply and be eligible for the disputed benefits. Finally, it argues that providing equal benefits to same-sex couples does not encourage opposite-sex couples to marry.

The State's proffered interests are legitimate. But the classification here is not sufficiently related to those interests.

First, we have repeatedly explained that "cost savings alone are not sufficient government objectives under our equal protection analysis."[88] The government can adequately protect its tax base and minimize cost without discriminating between similarly situated classes.

Second, the State allows married couples to establish eligibility for the exemption merely by making a sworn statement. No other proof of marital status is required. Thus, the State's assertion that sworn statements will not suffice for same-sex couples is unpersuasive. The State lists potential impediments to verifying that same-sex couples are in marriage-like relationships, but it has not explained why the initial application cannot require disclosure of sufficient information to satisfy threshold municipal concerns about a given relationship. The State seems to suppose that no initial disclosure can be sufficient, but we are unwilling to make that assumption. We rejected an equivalent argument in *ACLU*.[89]

Third, we can assume that providing benefits to spouses promotes marriage

---

[88]     *Herrick's Aero-Auto-Aqua Repair Serv. v. State, Dep't of Transp. & Pub. Facilities*, 754 P.2d 1111, 1114 (Alaska 1988); *see also Alaska Pac. Assurance Co. v. Brown*, 687 P.2d 264, 272 (Alaska 1984).

[89]     *Alaska Civil Liberties Union*, 122 P.3d at 791−92.

among adults who can marry. But "restricting eligibility to persons in a status that same-sex domestic partners can never achieve . . . cannot be said to be related to that interest."[90]  The State has not explained how denying benefits to couples who cannot marry will promote marriage in couples who can. We assume, as the couples argue, that giving the full benefit only to married couples will not encourage same-sex domestic couples to leave their partnerships and enter into heterosexual relationships with an intention to marry.

The State's additional arguments are unpersuasive. For example, the State argues that same-sex couples will be able to obtain the exemption program's full benefit in some circumstances. This contention is irrelevant, because it is undisputed that the full benefit of the exemption program was unavailable to these two couples, and would likewise be unavailable to any other same-sex domestic couple in similar circumstances.

Because the exemption program's marital classification does not bear a substantial relationship to the interests identified by the State, we conclude that the exemption program fails minimum scrutiny and violates these couples' rights to equal protection.

F.     An Exemption Applicant Must Have An Ownership Interest.

The State contends that because they were not eligible for the senior citizen exemption, it was error to rule for Fred Traber and Laurence Snider, the third couple. Alaska Statute 29.45.030(e) exempts $150,000 of assessed value of a "property *owned and occupied* as the primary residence and permanent place of abode by a [senior citizen or disabled veteran]." (Emphasis added.) The State argues that the statute requires that the senior citizen both occupy and own the residence. Because Fred Traber was the "sole owner" but was not over 65 and Laurence Snider was over 65 "but had no ownership

---

[90]     *Id.* at 793.

interest," the State contends that neither met the statute's eligibility requirements. It also argues that the superior court erred in reading the relevant regulation, 3 AAC 135.085(a), as creating an exception to the ownership requirement.

We must therefore decide whether the senior citizen must have an ownership interest in the residence.

We begin with the words of the statute. They exempt a residence "owned and occupied" by a senior citizen.[91] They seem to express necessary conditions for the exemption. The conjunction "and" between "owned" and "occupied" implies that the senior citizen must both own and occupy the residence. No words in the statute imply that a residence is exempt if the senior citizen has no ownership interest in it. We therefore read the statute to require the senior citizen to occupy the residence and to have some ownership interest in it. Per the statute's words, if only one member of a couple is a senior citizen, but that member has no ownership interest in the residence, the exemption does not apply.

In granting relief, the superior court relied on 3 AAC 135.085(a), which states, "[w]hen an eligible person and his or her spouse occupy the same permanent place of abode . . . the reimbursement applies, *regardless of whether the property is held in the name of the husband, wife, or both*." (Emphasis added.) The superior court reasoned that "[t]he regulation language clearly extends the Tax Exemption to eligible applicants who share a home with their spouse, but who do not own the home."

The State asserts that the regulation's reference to an "eligible person" must incorporate the statute's eligibility requirements, including the requirement of ownership.

Traber and Snider respond that if they could marry, Snider would receive

---

[91]    AS 29.45.030(e).

the full exemption even though the property was held in Traber's name.[92]  Citing the regulation, they also argue that the State treats a senior citizen (or disabled veteran) spouse as owning 100% of the property, even if he or she does not.  They claim that Snider is eligible to claim the exemption as a senior citizen even though the home is held exclusively in Traber's name.

The implementing regulation relied on by the superior court and by the couples, 3 AAC 135.085(a), specifies when the State will reimburse municipalities for the tax revenues lost as a result of the statutory exemption.  It does not explicitly excuse or ameliorate any exemption requirements set by the enabling statute.

We do not read the regulation as making it irrelevant that a senior citizen has no ownership interest at all.  The regulation does make it irrelevant that the property "is held in the name of the husband, wife, or both."[93]  That language means that the identity of the *title holder* is not itself determinative,[94] but the regulation does not say that actual ownership is irrelevant.  Had that been the promulgators' intention, we would expect the regulation to refer to "ownership," not title ("held in the name of").  And to read the regulation to make ownership altogether irrelevant would cause it to conflict with the plain words of the statute.  The best way to avoid any such conflict is to read "eligible person" in the regulation to refer to a person who is eligible, per the statute's

---

[92]  AS 29.45.030(e).

[93]  3 AAC 135.085(a).

[94]  *Cf.* AS 34.15.010(d), which implicitly recognizes a distinction between a spouse's interest in a family home as memorialized by the title and a property interest entitled to protection.  Unless the spouse appears on the title, that statute provides that the spouse's failure to join in the deed or conveyance of the family home does not affect the validity of the transaction so long as the spouse does not timely sue to set aside the conveyance.  *Id.*

requirements, for the senior citizen or disabled veteran exemption.[95] Given the statute's plain words and the absence of any contrary implication in the statute, we are unwilling to read the regulation to mean that the senior citizen or disabled veteran does not need to have any actual ownership interest at all in the property. We therefore reject the reading the superior court adopted.

Even assuming the expansive reading of the regulation proposed by the couples and adopted by the superior court were permissible, the word "eligible" in 3 AAC 135.085(a) is, at best for the couples, ambiguous. The couples may assume that anyone benefitted by the exemption program, i.e., either a senior citizen or a disabled veteran who both owns and occupies the residence, or the spouse who owns the residence occupied by the senior citizen or disabled veteran, is "eligible." But it would be odd to rely on an ambiguous regulation to invert the meaning of an unambiguous statute. And most importantly, "eligible" as it is used in the controlling subsection of the statute cannot be read to suggest that a senior citizen or disabled veteran applicant does not need to have some ownership interest in the residence.[96] Other passages in the

_____

[95] When interpreting an ambiguous regulation, we give it an interpretation that avoids putting the regulation into conflict with its enabling statute. *See State v. Anderson*, 749 P.2d 1342, 1343–44 (Alaska 1988) (quoting AS 44.62.030) ("[N]o regulation adopted is valid or effective unless consistent with the statute and reasonably necessary to carry out the purpose of the statute."); *see also Wilber v. State, Commercial Fisheries Entry Comm'n*, 187 P.3d 460, 464 (Alaska 2008) (reviewing regulations to determine whether they conflict with statutory or constitutional provisions); *see also Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 516 (Alaska 1998) (quoting *City of Anchorage v. Scavenius*, 539 P.2d 1169, 1174 (Alaska 1975)) ("To determine whether two statutory provisions stand in conflict, we must interpret them together, in context with other pertinent provisions rather than in isolation, and with a view toward reconciling conflict and producing 'a harmonious whole.' ").

[96] AS 29.45.030(e) (providing in part that "if two or more persons are eligible
(continued...)

various exemption statutes use "eligible" in ways that imply that the legislature used the term to refer to those particular persons, e.g., senior citizens or disabled veterans, the legislature intended the exemption statutes to benefit.[97]  These statutory passages do not imply that spouses who are not themselves either senior citizens or disabled veterans are also "eligible."  Indeed, these statutes do not discuss spouses at all, except in the context of widows or widowers, categories that necessarily exclude a person whose senior citizen or disabled veteran spouse is still alive.

"Whether the regulation is consistent with the statute involves statutory interpretation, which is a question of law, to which we apply our independent

_____

[96]  (...continued)
for an exemption for the same property," they shall decide among themselves who is to receive the benefit).

[97]  See for example, AS 29.45.030(e) (using "eligible" consistently with our interpretation);  AS 29.45.030(f) (providing in part that "[t]o be eligible for [the senior citizen or disabled veteran] exemption . . . the municipality may by ordinance require that an individual also meet requirements under one of the following paragraphs: (1) the individual shall be eligible for a permanent fund dividend . . . .");  AS 29.45.040(a) (providing for a "tax equivalency payment" to a resident who "is eligible" if the resident is at least 65 years old or a disabled veteran or at least 60 years old and the widow or widower "of a person who was eligible for payment under (1) or (2) . . . ."); AS 29.45.040(b)–(d) (using "eligible" in a way that implies it refers to the direct beneficiaries of the exemption); AS 29.45.052(b) (requiring an individual applying for a below-poverty-level tax deferral to submit "proof of eligibility"); AS 29.45.053(b) (requiring that "if two or more are eligible" for a law-enforcement officer exemption, they shall decide among themselves who is to benefit).

AS 29.45.030(e), in language parallel to the text of AS 29.45.040(a) quoted above, extends the senior citizen/disabled veteran exemption to an owner/occupant who is at least 60 years old and is "the widow or widower of a person who *qualified* for" the senior citizen or disabled veteran exemption. (Emphasis added.)  It is probable the legislature intended "qualified" to mean the same thing as "eligible."

judgment."[98]    When interpreting statutes and regulations, seemingly conflicting provisions must be harmonized unless such an interpretation would be at odds with statutory purpose.[99]

Reading the statute and the regulation together,[100] we hold that a residence is not exempt unless the senior citizen or disabled veteran has an ownership interest in it. The statute does not require the senior citizen or disabled veteran to be the sole owner. And the program, as defined by statute and regulation, does not specifically require that the ownership interest be reflected in the title. But we do not see how property can be "owned" by a senior citizen or a disabled veteran unless he or she has some actual ownership interest in the property.

The superior court gave three additional reasons for rejecting the State's contention that the regulation did not extend the statutory exemption to this residence. It first noted that the Municipality had granted a full exemption to another married couple although the "non-eligible spouse solely owned" their shared home. That exemption was irrelevant because the statute's language controls. If the exemption was granted to that couple in error, its grant neither determines a valid reading of the statute nor sets a standard that must be followed for a similarly situated couple.[101] And if it was granted

---

[98]     *State, Dep't of Natural Res. v. Greenpeace, Inc.*, 96 P.3d 1056, 1061 n.10 (Alaska 2004) (citing *Payton v. State*, 938 P.2d 1036, 1041 (Alaska 1997)).

[99]     *Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 517 (Alaska 1998) ("The goal of reconciling conflict must thus give way when harmony between potentially conflicting provisions can be achieved only at the price of an interpretation at odds with statutory purpose.").

[100]     *See Underwater Constr., Inc. v. Shirley*, 884 P.2d 150, 155 (Alaska 1994) (holding that related provisions should be read together).

[101]     *See Flisock v. State, Div. of Ret. & Benefits*, 818 P.2d 640, 644 n.5 (Alaska (continued...)

properly, it must be because the non-titled spouse nonetheless had an ownership interest that satisfied the statute.

The superior court also thought it significant that Alaska Association of Assessing Officers Standard 1.(b) states in part that the exemption applies "to the entire value of the property irrespective of that percentage of ownership of the applicant." But as the State points out, the text of the standard presupposes that an "eligible applicant" and his or her spouse own the residence; the text therefore incorporates the same notions of eligibility we discussed above. And the State correctly reads this standard to implicitly tie eligibility to ownership because the standard expressly addresses the situation "when partial property ownership exists." The standard does not imply, much less say, that a residence is exempt if the senior citizen or disabled veteran has no ownership interest in it.

Finally, the superior court thought it particularly important that the "legislature intended the exemption to apply" even in those few situations when the applicant spouse does not own or partially own the residence. It reasoned that if the two men were married, the senior citizen "would be able to claim the exemption." It concluded that there was a viable equal protection claim.

We assume for discussion's sake that if a married couple in Traber and Snider's identical situation were eligible to receive the exemption, equal protection would not permit denying the exemption to Traber and Snider. But as we have seen, AS 29.45.030(e) would not exempt the residence of a married couple if only one member was a senior citizen or disabled veteran but that member had no ownership interest whatsoever. Because Traber and Snider were treated no differently from that

---

[101]    (...continued)
1991) (holding claimant was not entitled to agency's mistaken application of statutory provision).

hypothetical married couple, there was no equal protection violation if Snider in fact had no ownership interest in the property.

The superior court granted complete summary judgment to Traber and Snider and denied the governments' cross-motion. It did not determine whether Snider had any ownership interest in the residence, but it confirmed that the parties had agreed that there were no genuine issues of material fact. Traber and Snider litigated their claims without preserving any possible factual dispute about whether Snider had any actual ownership interest that would satisfy AS 29.45.030(e).[102]

We have concluded as a matter of law that the senior citizen or disabled veteran must both occupy and have an ownership interest in the residence. There is no genuine factual dispute about whether Snider is an owner of the residence. We consequently reverse that portion of the judgment in favor of Traber and Snider. As to their claims, we remand for entry of judgment for the State and Municipality.

## G.     The Attorney's Fee Award Requires Further Proceedings.

The State and Municipality argue that it was error to grant the couples' motion for an award of 100% of their attorney's fees, $135,475.50. The State and

---

[102]     The State argues here that Snider had "no ownership interest" in the residence, and the superior court appeared to assume that he had none. The couples' complaint did not allege that Snider was in fact an owner of the residence, nor does the couples' appellate brief.

The complaint instead alleged that the home "is held in Traber's name, but the couple has made it their home together and both partners view the home as belonging to both of them." Their appellate brief makes the same assertion. The parties' cross-motions for summary judgment raised no factual dispute about whether Snider in fact had any ownership interest in the residence. In short, Snider and Traber have not asserted that Snider had any legally cognizable ownership interest in the residence or that an alternative ground — that Snider in fact has some qualifying ownership interest — exists for affirming the court's judgment in their favor.

Municipality contend that it was an abuse of discretion not to make the findings needed to address their arguments opposing the fees motion.

The couples' motion sought $135,475.50 for 458.8 billed hours of services. The parties filed memoranda discussing whether the couples qualified as constitutional claimants and whether equitable factors applied. The State and Municipality argued that the requested fees were excessive, reflected duplicative services, and were much higher than those awarded in *ACLU*, the case the couples claimed controlled. The Municipality also argued that the couples did not establish that there was insufficient economic incentive to bring the litigation, and that other factors, including the relative simplicity of the case, justified a reduction in the award. On appeal, the State and Municipality argue that the court made no findings resolving their objections.

We first observe that our reversal of the portion of the judgment entered in favor of Traber and Snider requires reconsideration of the fee award, aside from the reasons the State and Municipality advance. Because Traber and Snider are no longer prevailing parties, fees may not be awarded to them. We leave it to the parties on remand to explore the reversal's effect on any claim for attorney's fees.

Because the same disputes may recur on remand, we now turn to the issues raised by the State and Municipality.

The fees order awarding the couples the full amount requested, $135,475.50, briefly stated that the couples had "properly" moved for fees under Alaska Civil Rule 82 and AS 09.60.010 and that the requested fees were reasonable in terms of hours spent and rates billed. It did not explain how Rule 82 or AS 09.60.010 applied, did not state whether the couples were prevailing constitutional claimants for purposes of AS 09.60.010, did not discuss whether the couples had sufficient financial incentive to sue absent their constitutional claims, and did not discuss whether Rule 82(b)(3) factors or other factors were relevant. It did not address any of the governments'

arguments, including their arguments that the billings reflected excessive and duplicative services.

The couples argue that as the prevailing parties, they can recover fees under Rule 82 and AS 09.60.010(c)(1), and that the superior court adequately explained its decision by referring to Rule 82 and AS 09.60.010. They rely on *Krone v. State, Department of Health & Social Services* for the proposition that courts should generally award full reasonable attorney's fees to couples who prevail on their constitutional claims.[103]

*Krone* addressed the interplay of Rule 82 and AS 09.60.010.[104] We there explained that AS 09.60.010 does not preclude the court from considering equitable factors, including the Rule 82(b)(3) factors, in determining whether the fees were reasonable.[105] But we cautioned that a trial court's "ultimate conclusion should be reached only after express consideration of all factors relevant to a determination of full reasonable fees for a claimant who prevails on constitutional claims."[106] A court must make sufficient findings to permit meaningful review of an attorney's fees award.[107] For

---

[103] *See Krone v. State, Dep't of Health & Soc. Servs.*, 222 P.3d 250, 255–56 (Alaska 2009).

[104] *Id.*

[105] *Id.* at 257–58.

[106] *Id.* at 258.

[107] *Simpson v. Murkowski*, 129 P.3d 435, 448 n.65 (Alaska 2006) ("[A] superior court's order must contain specific findings of fact and conclusions of law to permit meaningful review by this court.") (internal quotation marks omitted); *S.L. v. J.H.*, 883 P.2d 984, 986 (Alaska 1994) ("It has been our practice to remand a case to the superior court when its findings are not detailed enough or sufficiently explicit to allow meaningful review.").

example, in *Simpson v. Murkowski* the superior court found that the couples were public interest litigants, but we remanded because the superior court did not explain whether the couples had sufficient economic incentive to bring the suit.[108]

An absence of explicit findings is not necessarily fatal. In *Law Project for Psychiatric Rights, Inc. v. State*, we stated, "[b]ecause the superior court's attorney's fees award accords with the presumptive percentages in Rule 82(b)(2) . . . the court need not offer an explanation of its award."[109] And in *State v. Jacob* we affirmed the award even though the superior court did not explicitly find prevailing-party status.[110] The bases for the awards were clear in those cases, so no further explanations were needed.

But here it is not self-evident from the order or the record how or whether the superior court resolved the governments' contentions. The order did not address their contentions, supported by citations to the billing records, that the hours billed and services provided by seven experienced attorneys billing at substantial rates were excessive and duplicative. The award did not accord with the presumptive percentages set out in Rule 82(b)(2). We cannot tell whether the award took into account any Rule 82(b)(3) factors or other equitable factors. We cannot assume there was an implicit conclusion that no Rule 82(b)(3) factors or equitable factors applied.

And although we can safely assume that the court concluded that the couples had prevailed on constitutional claims, the court made no finding about whether the couples had sufficient economic incentive to sue, one of the statutory factors

---

[108]    129 P.3d at 447–49.

[109]    239 P.3d 1252, 1257 n.25 (Alaska 2010) (quoting *Marsingill v. O'Malley*, 128 P.3d 151, 163 Alaska 2006)) (internal quotation marks omitted).

[110]    214 P.3d 353, 359-60 (Alaska 2009).

pertinent to awarding full fees.[111] The award's reference to AS 09.60.010 is not self-explanatory. We cannot assume that there was an implicit finding that the couples had insufficient economic incentive to sue.

Because Traber and Snider are no longer prevailing parties, we vacate the entire fees award and remand for further proceedings.[112] Remand will also permit entry of findings or rulings sufficient for appellate review of subsequent contentions that an attorney's fees award, including an award of full fees, on remand was an abuse of discretion, legally erroneous, or clearly erroneous.

## V.    CONCLUSION

For these reasons, we AFFIRM the superior court's declaration that "in combination," AS 29.45.030(e) and 3 AAC 135.085(a) and (c) violate Alaska's equal protection clause "by imposing a spousal limitation that facially discriminates against same-sex domestic partners." We likewise AFFIRM the declaration of prevailing party status as to Schmidt, Schuh, Vollick, and Bernard. As to  Snider and Traber, we REVERSE the ruling that the exemption applied to them and that they had "stated a viable equal protection claim." We also REVERSE the order for entry of final judgment to the extent it declares Snider and Traber to be prevailing parties, and REMAND for

---

[111]    *See* AS 09.60.010(d)(2). Moreover, when it executed the order for entry of final judgment about two months before it entered the order awarding fees, the superior court struck through language proposed by the couples that would have ruled "that the plaintiffs are thus 'constitutional litigants' within the meaning of [AS] 09.60.010(c) and . . . Rule . . . 82."

[112]    Remand will give the Municipality an opportunity to elaborate on its apportionment request. The Municipality asked the superior court to apportion fees pro rata. We do not need to decide whether that request preserved the issue, because the couples do not oppose remand on the issue of apportionment, and the State's reply brief does not respond to the Municipality's appellate apportionment argument. Because we remand for further proceedings, the parties may litigate apportionment on remand.

entry of judgment for the State of Alaska and Municipality of Anchorage on the claims of Traber and Snider.

We VACATE and REMAND the attorney's fee award for the reasons discussed in Part IV.G.

WINFREE, Justice, concurring.

I agree with the court's analysis and decision as it addresses the issues litigated in the superior court and presented to us in this appeal. *Alaska Civil Liberties Union v. State*[1] mandates the result — we are bound to follow its precedent and neither the State of Alaska nor the Municipality of Anchorage contends that it should be overruled.

I write separately only to question whether the same result might have been achieved through a pure statutory interpretation analysis, even though it was not argued in the superior court or on appeal.

As we hold today, AS 29.45.030(e) requires that a person claiming a senior citizen or disabled veteran property tax exemption must have an ownership interest in the assessed residential real property. The tax exemption applies to the "real property owned and occupied as the primary residence and permanent place of abode" by an eligible person.[2] But nothing in AS 29.45.030(e) expressly limits the exemption to the percentage ownership held by the eligible applicant.[3] And the connected regulation regarding the State's reimbursement to the Municipality provides that when the property is occupied by two or more persons who are not married, the exemption amount "applies

---

[1]    122 P.3d 781 (Alaska 2005).

[2]    AS 29.45.030(e).  *Cf.* AS 29.45.160(b) (providing that real property assessments are "to the record owner" as reflected by the district recorder and that the person "listed as owner is conclusively presumed to be the legal record owner").

[3]    *Cf. id.* The one sentence in this statutory provision that might suggest such a limitation states that "if two or more persons are eligible for an exemption for the same property, the parties shall decide between or among themselves who is to receive the benefit of the exemption." But, as I have noted, this question was not litigated in the superior court or contested on appeal — without the benefit of briefing and analysis, it is difficult to determine what this language means.

only to the portion of the property permanently occupied by the eligible applicant . . . as a place of abode."[4]

As noted in our comparison of a tenancy by the entirety and a tenancy in common,[5] absent an agreement to the contrary, tenants in common own undivided interests in real property and have an equal right to possess the entire property. Accordingly, if any two (or more) unmarried persons are tenants in common of residential real property used as their primary place of abode, each has the right to occupy 100% of the property; if one of those persons is an eligible applicant for the tax exemption, then it may be that the exemption applies to its fullest extent, just as if the only owners and occupiers were a husband and wife.

The factual anomaly here is that two of the unmarried couples in this case owned their primary residence as tenants in common, but the eligible applicant of each couple expressly stated in her application that she owned and occupied 50% of the property. It seems to me inconsistent that these couples could state they were in long-term, committed, marriage-like relationships while at the same time somehow splitting the occupancy of their residences into separate spheres. I suspect the statements about occupation were based on a misunderstanding of the law of common tenancy and undivided possession, and simply mirrored their (undivided) ownership interests.[6] Had the eligible applicants stated that they owned an undivided 50% and occupied 100% of the residential property, they may well have been entitled to the exemptions based on the

---

[4]     3 Alaska Administrative Code (AAC) 135.085(c) (2012).

[5]     Op. at 22 n.69.

[6]     I would be surprised if the same mistake were not made by eligible applicants who were married and holding title to their residence with their spouses as either tenants by the entirety or tenants in common.

express language of the statute and the related regulation.

From the record before us, it seems we are faced with the issues addressed in our decision because the parties all assume the senior citizen and disabled veteran tax exemption of AS 29.45.030(e) is limited to the eligible applicant's percentage ownership interest of the residence, except, due to 3 AAC 135.185(a), in the case of a residence owned and occupied by a married couple. And if that is true, then today's decision correctly addresses it. If, on the other hand, the statutory exemption is allowable in full with any amount of ownership and full occupation, then today's decision is unnecessary.